## STATE v. WALLACE C. BRATTRUD.[1]

April 25, 1941.

Nos. 32,750, 32,751.

*J. A. A. Burnquist,* Attorney General, *M. Tedd Evans,* Assistant Attorney General, and *John H. McLoone,* County Attorney, for the State.

*Meighen, Knudson & Sturtz,* for defendant.

LORING, JUSTICE.

These two cases come here upon questions of law not decided by the trial court but certified to this court as important and doubtful under 2 Mason Minn. St. 1927, § 10756. The defendant, mayor of the city of Waseca, a city organized under a home rule charter, was accused in two informations of wilful neglect of official duty under 2 Mason Minn. St. 1927, § 9970[2] and *Id.*

---

[1]Reported in 297 N. W. 713.

[2]"9970. Whenever any duty is enjoined by law upon any public officer or person holding public trust or employment, every wilful neglect to perform such duty, and every malfeasance in office, for the punishment of

§ 10028.[3] One information charged the defendant with wilfully refusing to sign a warrant in payment of a bill for road oil contracted for with the Socony-Vacuum Oil Company, and the other accused him of wilfully refusing to sign a contract with certain engineers to proceed with a preliminary survey for a sewage disposal plant as authorized and directed by the city council. Demurrers were interposed to both informations, and the trial court certified as important and doubtful the questions as to whether the informations stated facts constituting a public offense or whether the sections referred to make it a gross misdemeanor for the defendant to neglect or omit or refuse to sign the instruments described in the informations.

The defendant contends that §§ 9970 and 10028 do not apply to the provisions of a home rule charter, but we think that the questions presented can be answered upon broader grounds than those presented by the defendant. It seems obvious to us that the provisions making wilful neglect of duty imposed by law upon a public officer a gross misdemeanor were not intended to apply to cases where the duty to be performed is not strictly and purely ministerial but pertains to public affairs necessarily involving questions of the legality of proceedings leading up to the duty imposed upon the public officer. Necessarily, there is involved in the imposition of such duty a responsibility on his part to determine for himself whether or not the proceedings up to that point have pursued a legal course. We do not mean by this that he has a discretion as to determining policy in connection with such matters as are here involved unless the law or the charter vests him with such discretionary or veto power; but, if the duty imposed upon him is of such character that as a matter of public

which no special provision has been made, shall be a gross misdemeanor, and punished by fine and imprisonment."

[3]"10028. Every public officer, or person holding a public trust or employment, who shall wilfully neglect or omit to perform any duty enjoined upon him by law, in case no punishment is specially provided therefor, shall be guilty of a gross misdemeanor."

interest he must, in the faithful discharge of his duties, scrutinize the preceding proceedings in order to determine whether in fact his duty has arisen, then we think that there was no intent upon the part of the legislature to subject the public officer to a criminal proceeding in case he concludes, perhaps erroneously, that the proceedings are illegal or that the signing of the documents, as here presented, would lead to the payment of an illegal claim against the city or the making of an illegal contract.

It cannot be that where civil process is so immediately available to determine the propriety of the performance of the act sought to be required of the public officer, and of the legality of the proceedings leading up to the point of performance by him, that the legislature intended to subject a public officer to criminal proceedings where a refusal on his part might perhaps be wholly in the public interest. Cases might be supposed where a refusal would be his duty. Nor do we think that the legislature intended that such matters of legality might only be presented as a matter of defense in criminal proceedings. The result of construing §§ 9970 and 10028 as contended for by the state would be so detrimental to the public interest that we cannot believe that the legislature intended so absurd a result. If the state's position is correct, an information might lie against state officers in matters involving the state's interest in the disbursement of large amounts when in fact such officers in good faith might challenge the legality of such action. There may be involved in the situation the question of the constitutionality of some act of the legislature. It is our belief that the sections here construed could only be invoked where the duties of the public officer are so purely ministerial that there can be no question about his obligation to perform them, as, for instance, in the filing or registration of instruments where adequate fees are tendered.

Both questions presented in each case are answered in the negative.

Mr. Chief Justice Gallagher took no part in the consideration or decision of this case.