**The PEOPLE of the State of Colorado,
Plaintiff-Appellee,**

v.

**Adolph BERUMAN, Defendant-Appellant.**

**No. 79SA115.**

Supreme Court of Colorado,
En Banc.

Jan. 11, 1982.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Sarah Scott Sammons, Asst. Atty. Gen., Litigation Section, Denver, for plaintiff-appellee.

Darol C. Biddle and Joseph A. Koncilja, Pueblo, for defendant-appellant.

LEE, Justice.

The defendant, Adolph Beruman, who was a supervisor of caseworkers in the Pueblo County Department of Social Services (department) and assigned to the Child Protective Services Unit, was convicted in Pueblo County district court of the offense of second degree official misconduct, section 18-8-405, C.R.S.1973,[1] for failure to proper-

1. That statute provides:

"18-8-405. Second degree official misconduct.

ly respond to a report of suspected child abuse. The charge on which he was indicted and tried alleged that he had refrained from performing his duty of supervising the child and making direct personal contact with the child after receiving a report of child abuse. We reverse his conviction.

Andrea Gurule, a seven year old child, had previously been placed in the custody of the department after having been determined to be a neglected and dependent child.[2] She was temporarily placed in a child treatment facility and a foster home, and her mother and step-father entered upon a course of treatment to better understand and meet Andrea's needs. The parents and the department agreed that it was in the child's best interests to return her to her parents' home with the hope of eventually restoring legal custody to them. Pursuant to this agreement, Andrea was returned to the home of her mother and step-father in February of 1976. In September of 1976, a final order was entered restoring legal custody of Andrea to her mother, under the supervision of the department. Kathy Steinberger was the caseworker assigned to Andrea and the defendant was Steinberger's supervisor. The step-father was generally uncooperative and had refused to allow the caseworker to visit the home, and he told his wife not to reveal their unlisted telephone number.

On November 30, 1976, a school nurse examined Andrea and observed various scratches and bruises on her arms and what appeared to be burns and burn scars on her hands and back. After consultation with the nurse, the school principal contacted the defendant at the Child Protective Services Unit and called Andrea's mother, advising them that the school suspected child abuse. Andrea and her mother claimed that the

family dog had inflicted the scratches and bruises. Andrea was absent from school the next day, reportedly because she had fallen at home. The principal again advised the defendant of his suspicions of child abuse.

The defendant indicated that he would take steps immediately. He then spoke by telephone with Andrea's mother, who told him of Andrea's behavior problems and asked for help. An appointment was made by the caseworker to meet with the parents on December 7, 1976 to discuss the problems. Only the mother kept the appointment. She related problems she was having with the child, including bizarre behavioral displays and agreed to consider the possibility of seeking treatment and removing Andrea from the home. The mother stated that both she and her husband wanted a full evaluation of the child before they would consider placing her outside of their home. The caseworker agreed to arrange for a consultation with the social psychologist who had also been treating the parents. Andrea met with the psychologist two times in December. However, an evaluation of her adjustment to the home was never completed because Andrea died by suffocation in early January 1977, allegedly under circumstances suggesting child abuse. Neither the defendant nor the caseworker had personally visited with Andrea from September 1976 until the time of her death.

Kathy Steinberger and the defendant were charged by indictment with second degree official misconduct based on their failure to adequately supervise and establish personal contact with Andrea, but were tried separately.

The defendant presented the following evidence and argument. Since the child

(1) A public servant commits second degree official misconduct if he knowingly, arbitrarily, and capriciously:
  (a) Refrains from performing a duty imposed upon him by law or clearly inherent in the nature of his office; or
  (b) Violates any statute or lawfully adopted rule or regulation relating to his office.
(2) Second degree official misconduct is a class 1 petty offense."

2. In 1975, her parents had agreed to a stipulation to that effect after the state had instituted proceedings to obtain custody of Andrea through court order. As early as 1974, the Social Services Department had received reports that Andrea had behavior problems and was not receiving proper care in her home.

had a history with the Child Protective Services Unit, an investigation into suspected child abuse suggested several treatment alternatives to the caseworker. Thus, actual contact with the child or a report to the police was discretionary so long as adequate steps were otherwise being taken. Considering the fact that Andrea had a history with the department; that the department had previously determined that progress was being made in the home setting; that Andrea's mother had agreed to undergo counseling and that her step-father had indicated he wanted to cooperate; and, that a professional consultation was being conducted with Andrea herself, the defendant claimed that he and the caseworker were justified in believing that Andrea was not in immediate danger at the time of the November 30 and December 1 reports from the school.

The defendant was convicted by a jury and appeals on several grounds. The defendant contends that the statute under which he was convicted is void for vagueness, that the indictment by which he was charged is insufficient, that the trial judge erred in refusing to grant a motion for a bill of particulars, that the jury instructions defining arbitrary and capricious were in error, and that his acts as an employee of the department were immune from prosecution under section 19–10–110, C.R.S.1973. He also argues that discretionary acts are not subject to prosecution under section 18–8–405, C.R.S.1973, and that the evidence was insufficient to prove he acted arbitrarily and capriciously, since there was no showing that a supervisor had any duty to exercise direct personal contact and supervision over the child.

### I.

We initially determine whether section 18–8–405, C.R.S.1973, pursuant to which the defendant was charged and convicted, is valid. The defendant argues that the statute is void because it is unconstitutionally vague. When reviewing a statute upon a challenge of unconstitutionality due to vagueness, our duty is to construe the statute so as to uphold its constitutionality whenever a reasonable and practical construction may be applied to the statute. *R & F Enterprises, Inc. v. Board of County Commissioners of Adams County*, 199 Colo. 137, 606 P.2d 64 (1980). A statute is presumed to be constitutional and one who challenges its constitutionality must prove its invalidity beyond a reasonable doubt. *People v. Lorio*, 190 Colo. 373, 546 P.2d 1254 (1976); *People v. Sneed*, 183 Colo. 96, 514 P.2d 776 (1973); *People v. Gonzales*, 188 Colo. 272, 534 P.2d 626 (1975); *Love v. Bell*, 171 Colo. 27, 465 P.2d 118 (1970).

A statute is unconstitutionally vague if persons of common intelligence must guess at its meaning. *Smith v. Goguen*, 415 U.S. 566, 94 S.Ct. 1242, 1246, 39 L.Ed.2d 605 (1974); *Connally v. General Construction Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322, 328 (1926); *see also People v. Ro'mar*, 192 Colo. 428, 559 P.2d 710 (1977); *People v. Garcia*, 189 Colo. 347, 541 P.2d 687 (1975); *Memorial Trusts v. Beery*, 144 Colo. 448, 356 P.2d 884 (1960). Penal statutes and regulations must be clearly understandable and reasonably specific so that the defendant may be sufficiently apprised of the crime with which he stands charged. *People v. Holloway*, 193 Colo. 450, 568 P.2d 29 (1977); *People v. Gonzales, supra.* This affords the defendant due process notice and enables him to plead the resolution of the charge as a bar to double jeopardy. Fundamental fairness requires that no lesser standard be applied. *U.S. Const.* amend. XIV; *Colo. Const.* art. II, sec. 25.

Section 18–8–405(1)(a), C.R.S.1973, makes it a crime for a public servant to "knowingly, arbitrarily, and capriciously: [refrain] from performing a duty imposed upon him by law or clearly inherent in the nature of his office ..." Paragraph (1)(a) of the statute creates criminal liability in two instances: when a public servant acting knowingly, arbitrarily, and capriciously, first, refrains from performing a duty specifically imposed upon him by law, or second, refrains from performing a duty "clearly inherent in the nature of his of-

fice." The two bases for criminal responsibility are in the alternative, and independent of the other.

■ Concerning the first basis for criminal responsibility, we view the language "duty imposed upon him by law" not to be unconstitutionally vague. Reasonably interpreted it refers to the omission to perform a duty prescribed by a legislative enactment, a legally adopted administrative rule or regulation, or a judicial pronouncement defining mandatory duties required of a specific public office.[3]

■ However, we view the alternate statutory basis of criminal responsibility to be unconstitutionally vague. *See, People in Interest of C. M.*, Colo., 630 P.2d 593 (1981). The language used to describe the proscribed conduct—"refrains from performing a duty . . . clearly inherent in the nature of his office"—provides no readily ascertainable standards by which one's conduct may be measured. The legislature has failed to define that phrase, and it is totally without parameters for the determination of guilt or innocence, thus allowing the exercise of unbridled discretion by the police, judge, and jury. *See Goldman v. Knecht*, 295 F.Supp. 897 (D.Colo.1969). The vagueness present in this statutory language impermissibly infringes the constitutional safeguards of fundamental fairness and due process, and creates a danger of arbitrary enforcement. We therefore hold that the language proscribing omissions of duty "clearly inherent in the nature of his office" is unconstitutionally vague.

■ Since the statute provides for alternate and independent bases of liability, we hold that the first basis of criminal responsibility—refrains from performing a duty imposed by law—is not affected by our ruling. Section 2–4–204, C.R.S.1973 (1980 Repl. Vol. 1B). "[T]he rule is that where a portion of a statute is unconstitutional, the remaining portions will be held valid if they are complete in themselves, not dependent on the void portion, and therefore, can be given legal effect." *Covell v. Douglas*, 179 Colo. 443, 501 P.2d 1047, 1050 (1972), *cert. denied* 412 U.S. 952, 93 S.Ct. 3000, 37 L.Ed.2d 1006 (1973).

Since the charge against the defendant included the failure to perform a duty "imposed upon him by law," we next turn to the question whether the indictment sufficiently charged him with an offense under the valid portion of paragraph (1)(a) of section 18–8–405, C.R.S.1973.

### II.

The indictment charged that the defendant:

"[D]id unlawfully, knowingly, arbitrarily and capriciously refrain from performing a duty imposed upon them by law and a duty clearly inherent in their office, to-wit: between about November 30, 1976 and January 9, 1977, said defendants refrained from direct, personal contact and supervision over Andrea Gurule, a child over which the said defendants, as employees of the Pueblo County Department of Social Services, had obligation to supervise while said child was placed with the child's parents, Darlene Corbett and Charles Corbett, after said defendants received reports from Pueblo School officials and school nurse of possible and actual child abuse of Andrea Gurule; said reports consisting of telephone contact from school officials on or about November 30, 1976 wherein a report was made of cigarette burns on the child, wounds to arms of the child, bruises and scratches to a large portion of said child's body, scars from apparent large burns to the child's back, and other injuries that were observed on November 30, 1976; and further report on or about December 1, 1976 from school officials to said defendants that the said Andrea Gurule was absent from school on December 1, 1976 and that the school had received word that the

---

**3.** Compare with C.R.S.1963, 40–7–46. In interpreting the prior statute, the court in *People v. Schneider*, 133 Colo. 173, 178, 292 P.2d 982 (1956), stated:

"Malfeasance in office cannot be charged except for breach of a positive statutory duty . . ." *See also State v. Brattrud*, 210 Minn. 214, 297 N.W. 713, 134 A.L.R. 1248 (1941).

child was injured at home, all which the school reported as highly suspicious in light of the observations made of the child on November 30, 1976 and the report at that time to the parents . . ."

We conclude that the indictment was insufficient to charge that the defendant refrained from performing a duty imposed upon him by law. Section 18–8–405(1)(a), C.R.S.1973, is written in general terms without describing the source of the duty alleged to be imposed by law. We have long held that where the acts constituting the offense are not described by the statute, an indictment merely reciting the statutory language is insufficient. *People v. Donachy*, 196 Colo. 289, 586 P.2d 14 (1978); *People v. Zupancic*, 192 Colo. 231, 557 P.2d 1195 (1977); *People v. Xericos*, 186 Colo. 21, 525 P.2d 415 (1974); and *Schraeder v. People*, 73 Colo. 400, 215 P. 869 (1923); *see also People v. Tucker*, Colo., 631 P.2d 162 (1981). Therefore, an indictment under the statute must set out the source of the duty imposed by law which the defendant failed to perform in addition to the specification of the facts alleged to constitute the failure of performance. It is essential that the defendant know what duties are imposed by law which have not been performed in order to allow him to prepare a defense, and further, to enable him to plead the resolution of the charge as a bar to further prosecution for the same offense. *Lowenburg v. United States*, 156 F.2d 22 (10th Cir. 1946); *People v. Donachy, supra.*

The failure to perform was set forth in the indictment, but the *source* of the legal duty alleged to have been breached was not set out. A general statement of duty is not sufficient where the statute looks to other law for its application and enforcement. Therefore, in our opinion, the defendant was not given effective notice of the crime charged and therefore was not afforded adequate opportunity to prepare a defense. This conclusion is buttressed by the fact that evidence and instructions presented at trial addressed the issue of the adequacy of the defendant's investigation, whereas the indictment merely set out an omission to establish personal contact with the child and to supervise her after the report of suspected child abuse was received. The record does not reveal any specific rule cited by the prosecution which required that the defendant establish direct personal contact with or supervision over the victim, and indeed, expert testimony was presented to the effect that a supervisor of caseworkers has no such direct duty. The prosecution relied upon general statutes and regulations addressed to the Department of Social Services and requiring an investigation to be conducted when an initial report of child abuse is received. *See* section 19–10–109, C.R.S.1973, and Social Services Rule B–7216.4 (no. 5), 12 CCR 2509–5, which set out in general terms the department's responsibility in conducting such an evaluation. However, a charge of official misconduct must be based upon mandatory legal duties specific to a particular public office, not upon general allegations of duty. No specific legal basis for the duty was set forth or cited in the indictment.

Because the indictment did not sufficiently charge a violation under the statute, the conviction of the defendant must be reversed. It is therefore unnecessary to address the merits of the other contentions of error raised by the defendant.

The judgment of conviction is reversed.