Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us.  Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
April 24, 2017

**2017 CO 33**

**No. 15SA215, <u>Rocky Mountain Retail Management v. City of Northglenn</u>—Vagueness—Medical Marijuana Licensing.**

The supreme court reviews the district court's order declaring a provision of the City of Northglenn's medical marijuana licensing ordinance unconstitutionally vague and finding that the City's denial of a medical marijuana center license to an applicant in reliance on that provision was arbitrary and capricious.

The supreme court holds that Northglenn City Code section 18-14-7(h), which allows the local licensing authority to consider the "number, type, and availability" of existing medical marijuana facilities near the proposed facility before approving or denying an application for a local license, is not unconstitutionally vague. The phrase "number, type, and availability" provides sufficient notice to applicants and reasonably constrains the exercise of the City's discretion. The supreme court further holds that the City's decision to deny the license application in this case was supported by substantial evidence in the record, and therefore was not arbitrary and capricious.

# The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2017 CO 33

### Supreme Court Case No. 15SA215
*Appeal from the District Court*
Adams County District Court Case No. 14CV30842
Honorable Mark D. Warner, Judge

### Plaintiff-Appellee:

Rocky Mountain Retail Management, LLC, d/b/a Rocky Mountain High,

v.

### Defendant-Appellant:

City of Northglenn, acting by and through its City Council.

### Judgment Reversed
*en banc*
April 24, 2017

**Attorneys for Defendant-Appellant:**
Hoffmann, Parker, Wilson & Carberry, P.C.
Corey Y. Hoffmann
Elizabeth R. Cross
  *Denver, Colorado*

**Attorneys for Amicus Curiae The Colorado Department of Revenue:**
Cynthia H. Coffman, Attorney General
Glen E. Roper, Deputy Solicitor General
Claudia Brett Goldin, First Assistant Attorney General
  *Denver, Colorado*

**Attorney for Amicus Curiae The Colorado Municipal League:**
Rachel L. Allen
  *Denver, Colorado*

No appearance on behalf of Plaintiff-Appellee Rocky Mountain Retail Management, LLC.

**JUSTICE MÁRQUEZ** delivered the Opinion of the Court.

¶1	Rocky Mountain Retail Management, LLC, d/b/a Rocky Mountain High, filed an application for a license to operate a medical marijuana center in the City of Northglenn. The Northglenn City Council, acting as the City's medical marijuana local licensing authority, denied Rocky Mountain's application after receiving evidence at two public hearings. Rocky Mountain sought judicial review of the City's decision in the district court, arguing that the denial was not based on substantial evidence in the record and was therefore arbitrary and capricious and an abuse of discretion. Rocky Mountain also asked the district court to declare certain licensing provisions of the Northglenn City Code unconstitutionally vague, including section 18-14-7(h), which sets forth factors a local licensing authority may consider before approving or denying a medical marijuana center license. The district court ruled that section 18-14-7(h) is unconstitutionally vague, and that the City's denial of the license in reliance on that invalid provision was arbitrary and capricious. The City appeals these rulings.

¶2	Section 18-14-7(h) of the Northglenn City Code, which contains language identical to a provision in the Colorado Medical Marijuana Code, permits the local licensing authority to consider the "number, type, and availability" of existing medical marijuana facilities before approving or denying an application for a local license. We are asked to decide whether section 18-14-7(h) is impermissibly vague. We are also asked to determine whether the City's decision to deny Rocky Mountain's application was supported by substantial evidence. Because the phrase "number, type, and availability" in section 18-14-7(h) provides sufficient notice to applicants and reasonably constrains the exercise of the City's discretion, we hold that section 18-14-7(h) is not

void for vagueness. We further hold that the City's decision to deny Rocky Mountain's license application was supported by substantial evidence in the record, and therefore was not arbitrary and capricious.

¶3    To provide background for our analysis, we first explain the framework for medical marijuana licensing at the state and local level and then provide the factual and procedural history of this case. We then consider the vagueness doctrine and its applicability to the licensing framework at issue here and hold that the district court erred in concluding that the Northglenn Code provision was unconstitutionally vague. Finally, we consider the City's decision to deny Rocky Mountain's license application and conclude that the decision was supported by substantial evidence. Accordingly, we reverse the judgment of the district court.

## I. Background

¶4    In 2010, the General Assembly enacted the Colorado Medical Marijuana Code, sections 12-43.3-101 to -1102, C.R.S. (2016), which sets forth "the exclusive means by which manufacture, sale, distribution, and dispensing of medical marijuana may occur in the state of Colorado." § 12-43.3-103(e).[1] The Medical Marijuana Code authorizes local governments to prohibit the operation of medical marijuana centers or to adopt licensing standards and requirements that may be in addition to, or more restrictive than, the standards set forth in state law. See §§ 12-43.3-301(2)(b), -310(1). The local

---

[1] The question of whether Colorado's marijuana laws are preempted by federal law is not raised in this case.

4

governing body may serve as the local licensing authority or designate an authority to serve this role. § 12-43.3-104(5).

¶5 A medical marijuana center must obtain licensing approval from both the state and local licensing authorities, and the denial of an application by a local licensing authority shall be considered a basis for the state licensing authority to revoke any state-issued license. §§ 12-43.3-305(2), -310(2). Licensing decisions made by the state and local licensing authorities are subject to judicial review under section 24-4-106, C.R.S. (2016), of Colorado's Administrative Procedure Act ("state APA"). § 12-43.3-801.

¶6 To implement the provisions of the Medical Marijuana Code, the City of Northglenn adopted Article 14 of the Northglenn Code, sections 18-14-1 to -44. Northglenn, Colo., Code § 18-14-2 (2017). Under the Northglenn Code, applicants for a license to operate a medical marijuana facility must submit an application and fee to the City showing that they meet several basic requirements and are not otherwise prohibited from receiving a license under the Northglenn Code.[2] See id. § 18-14-7(a), (e). After the City receives an application for a new license, the local licensing authority must schedule a public hearing on the application and must disclose the findings of its

---

[2] For example, Northglenn Code section 18-14-12 prohibits certain individuals from holding a license (e.g., any person under twenty-one years of age or any person convicted of a felony for drug possession, distribution, or use). Northglenn Code section 18-14-11 prohibits medical marijuana facilities in certain locations (e.g., within 1,000 feet of any educational institution, within 1,000 feet of any other marijuana business, or within any building or structure that contains a residential unit). The Medical Marijuana Code has similar provisions. See §§ 12-43.3-307(f), (h)(II), -308(1)(d)(I), C.R.S. (2016).

preliminary investigation regarding the application in advance of that hearing.  Id. § 18-14-7(f)–(g).

¶7    Relevant here, section 18-14-7(h) of the Northglenn Code contains language identical to section 12-43.3-303(2) of the Medical Marijuana Code.  This language describes the information the local licensing authority may consider before entering a decision approving or denying an application for a local license, including the "number, type, and availability" of existing medical marijuana centers located nearby:

> Before entering a decision approving or denying the application for a local license, the local licensing authority may consider, except where this Article specifically provides otherwise, the facts and evidence adduced as a result of its investigation, as well as any other facts pertinent to the type of license for which application has been made, including the number, type and availability of medical marijuana centers, optional premises cultivation operations, or medical marijuana-infused products manufacturers located in or near the premises under consideration, and any other pertinent matters affecting the qualifications of the applicant for the conduct of the type of business proposed.

Northglenn, Colo., Code § 18-14-7(h) (2017); § 12-43.3-303(2) (emphases added).[3]  As noted by the Colorado Municipal League in its amicus brief, other Colorado

---

[3] The Northglenn City Council denied Rocky Mountain's application in 2014.  Since then, the City has amended section 18-14-7(h) to include additional factors the licensing authority must consider:

> In addition, the local licensing authority shall consider whether approval of the application would result in any of the following demonstrable negative impacts on the surrounding neighborhood: (1) an undue concentration of a certain class of medical marijuana business that would require the use of additional law enforcement resources; (2) an increase in traffic congestion; (3) a shortage of available parking; or (4) other demonstrable negative impacts caused by the new medical marijuana business.

6

municipalities have adopted local licensing ordinances derived from section 12-43.3-303(2) that similarly permit consideration of the "number, type, and availability" of existing marijuana businesses.[4]  With this legal framework in mind, we turn to facts of this case.

## II.  Facts and Procedural History

¶8      In November 2013, Rocky Mountain submitted an application to the City of Northglenn for a medical marijuana center license.  The City issued a preliminary report finding that the application met preliminary requirements and that Rocky Mountain was eligible to operate as a medical marijuana center subject to, among other things, a public hearing before the City Council (acting as the Northglenn Marijuana Licensing Authority).

¶9      At the hearing in January 2014, the City Council heard evidence regarding Rocky Mountain's application for a medical marijuana center license under the criteria set forth in the Medical Marijuana Code and the Northglenn Code.  This evidence included testimony from Rocky Mountain's principal regarding the type of products and services

---

Northglenn, Colo., Ordinance 1695 (Feb. 23, 2015).  The amended provision is not before this court.

[4] See, e.g., Breckenridge, Colo., Code § 4-14-20 (2017) ("[T]he local licensing authority shall consider, among the other relevant factors described in the applicable codes, the number, type, and availability of medical marijuana businesses and retail marijuana establishments located in or near the premises for which the application has been submitted."); Englewood, Colo., Code § 5-3D-6(B) (2016) ("[T]he Local Licensing Authority may consider . . . the facts and evidence adduced as a result of its investigation, as well as any other facts pertinent to the type of license for which application has been made, including the number, type, and availability of Medical Marijuana outlets located in or near the premises under consideration.").

it would offer and its experience in the industry in other jurisdictions. City Council members asked Rocky Mountain to address whether, given the existence of another medical marijuana facility roughly a block away, there was a need for Rocky Mountain's business at the proposed location. Rocky Mountain testified that the genetics of its product are different and that it would offer unique strains of marijuana and a superior product. When pressed by a City Council member to substantiate a need for another facility in Northglenn in addition to the three already in operation, Rocky Mountain's representative said that he could not "say with certainty" that the City needed another facility or demonstrate such a need at the time of the application.

¶10 Another City Council member noted that the local licensing authority may consider the number, type, and availability of existing marijuana centers. She opined that Rocky Mountain's proposed location was too close to an existing center and that there were sufficient centers in Northglenn, considering the City's small square mileage. A representative from an existing medical marijuana facility in Northglenn testified that Rocky Mountain's proposed location was very close to his facility and other existing facilities. After hearing testimony in support of and in opposition to the application, the City Council voted to deny Rocky Mountain's license application. In its written findings, the City Council concluded that the evidence presented at the hearing showed that the number, type, and availability of medical marijuana centers in proximity to Rocky Mountain's proposed location and within the boundaries of the City were sufficient to serve the needs of the Northglenn community.

¶11 Rocky Mountain requested a rehearing, as permitted by Northglenn Code section 3-7-12, seeking to provide additional evidence regarding the adequacy of the number, type, and availability of medical marijuana facilities in Northglenn.

¶12 At the second public hearing on March 10, 2014, Rocky Mountain offered testimony of a private investigator who discussed his observations of the existing medical marijuana centers in Northglenn. He testified that he observed a wait line of approximately thirty people at the medical marijuana facility closest to Rocky Mountain's proposed location and that customers appeared to be waiting for approximately thirty minutes to one hour. Upon further questioning, he clarified that he observed the wait line within approximately five to ten minutes of the facility's opening in the morning and that he did not see wait lines at other facilities. Rocky Mountain also presented three medical marijuana patients (including a Rocky Mountain employee) who testified that when the facility closest to Rocky Mountain's proposed location began selling recreational marijuana, the wait times increased significantly, and that the facility reduced the number of strains of medical marijuana it was selling. Rocky Mountain's technical director testified about the company's development and testing processes and about certain products it sold that did not appear to be widely offered, based on his review of the websites of other Northglenn facilities.

¶13 Representatives from two existing facilities in Northglenn also testified. These representatives contradicted Rocky Mountain's assertions that its products were

unique, stating that similar products were offered in their stores. They also testified that the wait time for medical marijuana customers is generally five to ten minutes.

¶14 After the rehearing, the City issued Resolution 14-31, making findings of fact supporting its decision to deny Rocky Mountain's application. The City Council concluded that the number, type, and availability of existing medical marijuana outlets and other pertinent factors under the Medical Marijuana Code and section 18-14-7(h) of the Northglenn Code precluded issuance of the license. Specifically, the City Council found that Rocky Mountain's testimony regarding the uniqueness of its products, when weighed against contradictory testimony from representatives of existing marijuana businesses in the City, was insufficient to show that the number, type, and availability of medical marijuana outlets was not meeting Northglenn's needs. It reasoned that evidence regarding what occurred at another facility within the first few months of selling both recreational and medical marijuana was not dispositive of need, nor did it establish that the number, type, and availability of medical marijuana outlets was insufficient.

¶15 The City Council found that the testimony of a representative of one existing facility was particularly credible on these issues because she neither supported nor opposed Rocky Mountain's request for a license. This representative testified that Rocky Mountain's products and strains were not unique in the Northglenn market. Conversely, the City Council gave no particular weight to testimony from representatives of another existing facility because such testimony was motivated by an apparent desire to prevent a competitor—Rocky Mountain—from receiving a license.

Finally, the City Council expressed concern regarding the testimony of Rocky Mountain's private investigator, whose testimony "indicated an apparent bias which affected his credibility."

¶16 Rocky Mountain sought judicial review of the City's decision by filing a complaint in Adams County District Court under section 24-4-106 of the state APA. Rocky Mountain requested a declaratory judgment that: (1) the City's denial of Rocky Mountain's application for a medical marijuana license was not based on substantial evidence in the record; (2) the City Council applied an improper legal standard; (3) the City's decision to deny the license was arbitrary and capricious; and (4) sections 18-14-5(a) and -7 of the Northglenn Code are unconstitutionally vague. In a written order issued April 1, 2015, the district court ruled that Northglenn Code section 18-14-7(h) is unconstitutionally vague and ordered that provision be stricken from the Code. The court concluded that because the City Council's decision relied upon section 18-14-7(h), its decision was arbitrary and capricious.

¶17 The City sought appellate review of this ruling in the Colorado Court of Appeals. However, because the district court held that Northglenn Code section 18-14-7(h) was unconstitutionally vague, the court of appeals referred the case to this court, and we accepted jurisdiction. See § 13-4-102(1)(b), C.R.S. (2016) (providing the court of appeals with initial jurisdiction over appeals from final judgments of district courts except in cases in which a statute or ordinance has been declared unconstitutional); § 13-4-110(1)(a), C.R.S. (2016) (directing the court of appeals to refer cases not within its jurisdiction to the supreme court, which shall decide the question of jurisdiction). The

11

City filed a brief in this case, and the Colorado Department of Revenue and the Colorado Municipal League filed amicus briefs in support of the City. Before the City filed its opening brief in this court, counsel for Rocky Mountain withdrew from the case, and no other entry of appearance was filed on behalf of Rocky Mountain.

### III. Vagueness

¶18 This court reviews the constitutionality of a municipal ordinance de novo. Town of Dillon v. Yacht Club Condos. Home Owners Ass'n, 2014 CO 37, ¶ 22, 325 P.3d 1032, 1038. Generally, such ordinances are presumed to be constitutional, and the party challenging the ordinance bears the burden to prove its unconstitutionality. See id.

¶19 We first discuss the vagueness doctrine and its applicability to the licensing framework at issue here. We then consider whether Northglenn Code section 18-14-7(h) is unconstitutionally vague. Because the phrase "number, type, and availability" in section 18-14-7(h) provides sufficient notice to applicants and reasonably constrains the exercise of the City's discretion, we hold that it is not void for vagueness.

### A.

¶20 The vagueness doctrine is rooted in principles of procedural due process. People v. Graves, 2016 CO 15, ¶ 17, 368 P.3d 317, 324. Due process requires laws to give fair warning of prohibited conduct so that individuals may conform their actions accordingly; it also demands that a penal statute establish standards that are sufficiently precise to avoid arbitrary and discriminatory enforcement. See id. Thus, the doctrine prohibits laws that forbid or require conduct in terms so vague that persons of common intelligence must necessarily guess as to their meaning and differ as to their application.

12

Watso v. Colo. Dep't of Soc. Servs., 841 P.2d 299, 309 (Colo. 1992).  The Supreme Court has explained that in a vagueness inquiry, the level of specificity required depends on the type of enactment challenged: "[t]he degree of vagueness that the Constitution tolerates—as well as the relative importance of fair notice and fair enforcement—depends in part on the nature of the enactment."  Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 498 (1982).  The Constitution permits "greater tolerance of [vague] enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe."  Id. at 498–99.  In contrast, where a statute threatens to inhibit speech or expressive conduct protected by the First Amendment, the vagueness doctrine demands a greater degree of specificity.  Graves, ¶ 18, 368 P.3d at 324.

¶21    A law is not unconstitutionally vague simply because it could have been drafted with greater precision.  Id.; see also People ex rel. City of Arvada v. Nissen, 650 P.2d 547, 550 (Colo. 1982) ("[D]ue process of law has never required mathematical exactitude in legislative draftsmanship.").  Rather, a law is unconstitutional only if it "is vague, not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all."  Bd. of Educ. of Jefferson Cty. Sch. Dist. R-1 v. Wilder, 960 P.2d 695, 703 (Colo. 1998) (quoting Coates v. City of Cincinnati, 402 U.S. 611, 614 (1971)).  Overall, "[t]he vagueness doctrine is not an exercise in semantics to emasculate legislation; rather, it is a pragmatic means to ensure fairness.  Where fairness can be achieved by a commonsense reading . . . we will not adopt a hypertechnical construction to invalidate

13

the provision." <u>Ams. United for Separation of Church & State Fund, Inc. v. State</u>, 648 P.2d 1072, 1086 (Colo. 1982) (quoting <u>People v. Garcia</u>, 595 P.2d 228, 231 (Colo. 1979)).

**B.**

¶22 Here, the district court concluded that Northglenn Code section 18-14-7(h) fails to provide sufficient definiteness so that "ordinary people can understand what conduct and conditions are required to avoid having the request [for a license] refused." The court relied on <u>Squire Restaurant and Lounge, Inc. v. City and County of Denver</u>, 890 P.2d 164, 170 (Colo. App. 1994), for the principle that some limit must guide a licensing board's discretion to grant or refuse a license. The court also concluded that because section 18-14-7(h) is permissive rather than mandatory (i.e., "the local licensing authority <u>may</u> consider" certain factors) this provision gives applicants insufficient notice regarding the factors to be considered. The district court therefore concluded that section 18-14-7(h) is unconstitutionally vague and ordered that it be stricken from the Northglenn Code.

¶23 For several reasons, we conclude that the district court erred in concluding that section 18-14-7(h) is unconstitutionally vague. First, the ordinance at issue neither penalizes nor criminalizes any conduct. Rather, it provides a framework within which the City Council exercises its broad discretion to grant or deny a license application. To the extent Rocky Mountain argues, and the district court concluded, that the Northglenn Code grants the City Council unfettered discretion and thereby allows for arbitrary application, we disagree. The factors listed in section 18-14-7(h)—"number, type, and availability" of other facilities "located in or near the premises under

14

consideration"—provide sufficient notice to applicants regarding what information the licensing authority will consider. Persons of ordinary intelligence can readily understand the meaning of "number, type, and availability" of existing medical marijuana facilities near the premises under consideration.

¶24 Second, although the licensing authority retains discretion under the ordinance to consider other pertinent matters, and "may" consider the factors listed, such discretion does not render the ordinance impermissibly vague. The district court noted that Colorado's liquor licensing statute requires licensing authorities to consider several factors when deciding whether to grant a liquor license. See § 12-47-312(2)(a), C.R.S. (2016).[5] But, the court reasoned, the liquor statute uses the mandatory language "shall consider," whereas the Northglenn Code (which mirrors the provision in the Medical Marijuana Code) uses the permissive language "may consider." However, the use of

---

[5] The statute permitting the sale of alcoholic beverages contains language similar to the provision at issue here. It provides that in an application proceeding for a license to operate an establishment selling alcoholic beverages, a local licensing authority shall consider, among other factors, the "number, type, and availability" of existing establishments:

> Before entering any decision approving or denying the application, the local licensing authority shall consider, except where this article specifically provides otherwise, the facts and evidence adduced as a result of its investigation, as well as any other facts, the reasonable requirements of the neighborhood for the type of license for which application has been made, the desires of the adult inhabitants, the number, type, and availability of alcohol beverage outlets located in or near the neighborhood under consideration, and any other pertinent matters affecting the qualifications of the applicant for the conduct of the type of business proposed . . . .

§ 12-47-312(2)(a), C.R.S. (2016) (emphasis added).

permissive language such as the phrase "including but not limited to" does not render the legislative definition of a term impermissibly ambiguous or vague. Regency Servs. Corp. v. Bd. of Cty. Comm'rs of Adams Cty., 819 P.2d 1049, 1055 (Colo. 1991). Here, the use of permissive rather than mandatory language in the medical marijuana licensing framework does not render section 18-14-7(h) unconstitutionally vague. In the criminal context, the doctrine of vagueness protects against the exercise of unfettered discretion by a decision maker but does not foreclose the exercise of discretion altogether. See People v. Rosburg, 805 P.2d 432, 439–40 (Colo. 1991) (neither the licensing board nor the prosecutors were "left with the unfettered discretion that the doctrine of vagueness seeks to avoid"); see also People v. Beruman, 638 P.2d 789, 793 (Colo. 1982) (an impermissibly vague statute was "totally without parameters for the determination of guilt or innocence, thus allowing the exercise of unbridled discretion by the police, judge, and jury"). Here, section 18-14-7(h) contains objective standards that reasonably constrain the exercise of the City Council's discretion.

¶25 Third, the district court's reliance on Squire Restaurant is misplaced. Squire Restaurant concerned a due process analysis, not an impermissible vagueness analysis. In that case, the only standard guiding the city's decision to renew the applicant's liquor license was "good cause," a term the city had not further defined. 890 P.2d at 166. The court of appeals concluded that "[s]uch a standard, without more, provides no way for a licensee to know in advance what evidence might be considered relevant to a request for renewal." Id. at 167. Here, by contrast, the standards outlined in Northglenn Code section 18-14-7(h) provide specific guidance to an applicant regarding what evidence

16

the City will consider—namely, the "number, type, and availability" of other medical marijuana facilities located near the premises under consideration.

¶26 Finally, to the extent the district court may have believed that the City Council's decision to deny Rocky Mountain's application was arbitrary and, therefore, necessarily the consequence of a vague ordinance, such a conclusion is incorrect. Rocky Mountain's complaint seeking judicial review argued principally that the City's decision was arbitrary and capricious—not that the phrase "number, type, and availability" of existing marijuana facilities is so indeterminate that persons "of common intelligence must necessarily guess at its meaning." See Broadrick v. Oklahoma, 413 U.S. 601, 607 (1973). The district court's order appears to conflate the danger of arbitrary or discriminatory enforcement created by impermissibly vague laws, see Graves, ¶ 17, 368 P.3d at 324, with the allegedly arbitrary application of an otherwise clear law. Although vague laws violate due process because they pose the danger of arbitrary enforcement, the arbitrary application of a given law does not necessarily mean that the law itself is unconstitutionally vague.

¶27 In sum, we conclude that Northglenn Code section 18-14-7(h) is not unconstitutionally vague. Moreover, as we explain below, the City's interpretation of the ordinance was reasonable, its decision was supported by substantial evidence, and its denial of Rocky Mountain's license application was not arbitrary and capricious.

## IV. The City Council's Decision

¶28 The district court concluded that the City Council's decision to deny Rocky Mountain's license application was arbitrary and capricious because it was based on a

provision it deemed unconstitutionally vague. As discussed above, we hold that Northglenn Code section 18-14-7(h) is not unconstitutionally vague. To the extent Rocky Mountain argued to the district court that the City's decision to deny the license application was arbitrary and capricious because (1) the City improperly considered the "need" for another facility in Northglenn, and (2) the City's decision was unsupported by substantial evidence in the record, we disagree. We hold that the City properly considered the need for another facility, and that its decision was supported by substantial evidence and therefore was not arbitrary or capricious.

¶29    As noted above, decisions by a local licensing authority regarding the issuance of medical marijuana licenses are subject to judicial review under the state APA. § 12-43.3-801. Judicial review under the state APA is limited to a consideration of whether the administrative action is

> arbitrary or capricious, a denial of statutory right, contrary to constitutional right, power, privilege, or immunity, in excess of statutory jurisdiction, authority, purposes, or limitations, not in accord with the procedures or procedural limitations of this article or as otherwise required by law, an abuse or clearly unwarranted exercise of discretion, based upon findings of fact that are clearly erroneous on the whole record, unsupported by substantial evidence when the record is considered as a whole, or otherwise contrary to law.

§ 24-4-106(7). Under this standard of review, the appropriate consideration for an appellate court is whether there is sufficient evidentiary support in the record for the decision of the administrative tribunal. Ross v. Fire & Police Pension Ass'n, 713 P.2d 1304, 1309 (Colo. 1986).

**A.**

¶30 Rocky Mountain argued below that "[t]he City erroneously used 'needs' rather than the more specific standards in its ordinance of number, type, and availability of existing facilities." It further contended that the City incorrectly read the "number, type, and availability" requirement in the Northglenn Code as equivalent to a "need" for the facility, akin to the finding required for liquor license applications. It maintained that because the Northglenn Code does not require a "needs of the neighborhood" showing, the City's use of that standard was error because Rocky Mountain was not on notice that the issue of "need" would be addressed at the hearing.

¶31 Although the City Council used the term "need" in its discussions and written findings, the evidence it considered at the hearings and discussed in its written findings reflects that its decision was grounded in the factors expressly outlined in the code: "number, type, and availability" of existing facilities in Northglenn. Regarding "number," the preliminary findings issued by the City found that four medical marijuana business licensees existed in the City, with three in operation, and the City Council referred to the existing facilities during the first hearing. Regarding "type," the City Council received evidence from Rocky Mountain about the type of products it proposed to sell and the type of products offered by other facilities. Regarding "availability," the City Council considered evidence regarding wait times at existing facilities.

¶32 Further, the City Council's consideration of "need" is a reasonable interpretation of its authority to consider the "number, type, and availability" of existing facilities

19

under Northglenn Code section 18-14-7(h). If other medical marijuana facilities of a similar type are located near the premises under consideration, and are available to consumers, then no need exists for the proposed facility. In other words, a consideration of "need" is simply a different way of expressing, "number, type, and availability" of existing facilities near the proposed new location. In any event, the City Council questioned Rocky Mountain regarding the need for its facility in Northglenn during the first hearing, and allowed Rocky Mountain to present additional evidence of need at the rehearing. Thus, Rocky Mountain was given notice and an opportunity to offer testimony on this point.

¶33 To the extent Rocky Mountain contends that the City Council incorrectly applied the "needs of the neighborhood" standard from the liquor licensing framework, that contention is misplaced. The "needs of the neighborhood" requirement in the liquor licensing context is a legal inquiry specific to that type of license, based on the language of the relevant statutes. See Canjar v. Huerta, 566 P.2d 1071, 1072–73 (Colo. 1977); § 12-47-312(2)(a) ("[T]he local [liquor] licensing authority shall consider . . . the reasonable requirements of the neighborhood for the type of license for which application has been made, the desires of the adult inhabitants, the number, type, and availability of alcohol beverage outlets located in or near the neighborhood under consideration . . . ." (emphases added.)). Here, the City Council properly considered the need for another facility in Northglenn based on the factors listed in the Northglenn Code.

20

¶34    Finally, we note that Northglenn Code section 18-14-7(h) broadly permits the local licensing authority to consider "any other facts pertinent to the type of license for which application has been made." Although we conclude that "need" is simply another way to express "number, type, and availability" of other facilities in the area, the "need" for a new facility also qualifies as "any other [pertinent] fact[]" that may be considered under section 18-14-7(h).

¶35    For these reasons, we conclude that the City Council correctly interpreted the language in Northglenn Code section 18-14-7(h). The City Council heard and considered evidence regarding the "number, type, and availability" of medical marijuana facilities in Northglenn, and the City Council's consideration of need was tethered to the factors expressly stated in the Northglenn Code.

**B.**

¶36    We conclude that the City's decision to deny Rocky Mountain's license was supported by substantial evidence when the record is considered as a whole. See § 24-4-106(7). The City held two public hearings on Rocky Mountain's license. The length of and number of witnesses at the second hearing show that the City received and considered a great deal of evidence before making its final decision to deny Rocky Mountain's license. Cf. Lawley v. Dep't of Higher Educ., 36 P.3d 1239, 1252 (Colo. 2001) (an administrative board acts in an arbitrary and capricious manner "[b]y neglecting or refusing to use reasonable diligence and care to procure . . . evidence" (quoting Van DeVegt v. Bd. of Cty. Comm'rs of Larimer Cty., 55 P.2d 703, 705 (Colo. 1936))). As discussed above, the evidence considered by the City Council correlated with the

21

factors in section 18-14-7(h), namely, the "number, type, and availability" of existing facilities near the proposed facility.

¶37 The City explained its decision in its written findings, specifying why it found certain testimony helpful and reliable, or not helpful. For example, it found the testimony of a representative from one existing facility particularly credible because she was neither in favor of, nor opposed to, Rocky Mountain's license request. It found the testimony of representatives from another facility to be unhelpful in its determination because the testimony was motivated by an apparent desire to prevent Rocky Mountain from obtaining a license. And it concluded that the testimony of Rocky Mountain's investigator "indicated an apparent bias which affected his credibility." An administrative agency, not the reviewing court, has the task of weighing conflicting evidence and determining the credibility of the witnesses. McClellan v. Meyer, 900 P.2d 24, 34 (Colo. 1995). Similarly, the City Council had the task of weighing conflicting evidence and determining the credibility of witnesses in this license application proceeding.

¶38 Specific evidence in the record supported the City Council's conclusion that the availability of existing medical marijuana stores in Northglenn was sufficient. The City Council considered that three other medical marijuana facilities operated in Northglenn; two witnesses testified that wait times at the existing facilities were approximately five to ten minutes. The City Council found the testimony of Rocky Mountain's investigator concerning longer wait times was not credible because of his apparent bias. The City Council also rejected Rocky Mountain's argument that its

22

proposed products were sufficiently unique to create a need for its new facility in Northglenn. This court will not substitute its judgment for the City Council's where the City Council received substantial evidence and adequately explained its consideration of that evidence in written findings. When the record is considered as a whole, we conclude that the City Council's decision to deny Rocky Mountain's license application was supported by substantial evidence.

## V. Conclusion

¶39    We hold that the district court erred in concluding that Northglenn Code section 18-14-7(h) is unconstitutionally vague. We further hold that the City Council's decision to deny Rocky Mountain's license application was supported by substantial evidence, and therefore was not arbitrary or capricious. We therefore reverse the judgment of the district court.