The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
March 26, 2020

**2020COA52**

**No. 19CA0059, *HCA-HealthONE v. Colo. Dept. of Labor and Employment* — Labor and Industry — Colorado Minimum Wage Order**

A division of the court of appeals considers whether the

Colorado Minimum Wage Order Number 35 (MWO) entitled a

hospital employee to compensation during designated meal periods.

The division holds that the MWO is not ambiguous and its plain

language provides that a meal period is compensable unless it is

both "uninterrupted" and "duty free" — which means completely

relieved of all duties.  Because the record shows that the employee

had duties during some meal periods at issue, the division holds

that the employee was entitled to compensation for those particular

meal periods.  Therefore, the division affirms in part, reverses in

part, and remands for further proceedings.

COLORADO COURT OF APPEALS 2020COA52

Court of Appeals No. 19CA0059
City and County of Denver District Court No. 17CV31608
Honorable Jennifer B. Torrington, Judge

HCA-HealthONE LLC, d/b/a North Suburban Medical Center,

Plaintiff-Appellant,

v.

Colorado Department of Labor and Employment, Division of Labor Standards
and Statistics,

Defendant-Appellee.

JUDGMENT AFFIRMED IN PART, REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE NAVARRO
Dailey and Miller*, JJ., concur

Announced March 26, 2020

Brownstein Hyatt Farber Schreck, LLP, Lisa Hogan, Carrie E. Johnson, Martine
T. Wells, Craig M. Finger, Denver, Colorado, for Plaintiff-Appellant

Philip J. Weiser, Attorney General, Evan P. Brennan, Assistant Attorney
General, Denver, Colorado, for Defendant-Appellee

Polsinelli PC, Gerald Niederman, Bennett Cohen, Gillian Bidgood, Denver,
Colorado, for Amicus Curiae Colorado Hospital Association

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2019.

¶ 1    Plaintiff, HCA HealthONE LLC, d/b/a North Suburban Medical Center (the Hospital), appeals the district court's order affirming the final agency decision holding that the Hospital owed wages and penalties to a former employee for work she performed during designated meal periods. The decision, issued by defendant, the Colorado Department of Labor and Employment, Division of Labor Standards and Statistics (the Division), determined that those periods were compensable under the Colorado Minimum Wage Order Number 35, 7 Code Colo. Regs. 1103-1(7) (effective Jan. 1, 2020-Mar. 16, 2020), https://perma.cc/GA3G-4ZUP (MWO).

¶ 2    Addressing a novel question, we hold that the MWO is not ambiguous and its plain language provides that a meal period is compensable unless it is both "uninterrupted" and "duty free." Because the Division correctly interpreted the MWO, and because the record supports the Division's decision that the employee here had duties during her meal periods (with the exception of one timeframe), we affirm in part, reverse in part, and remand for further proceedings.

## I.    Factual Background

¶ 3    The underlying agency action was initiated by the former employee, the claimant and nominal party here, Lynne Witt.[1]

### A.    Witt's Job Responsibilities

¶ 4    Witt worked twelve-hour shifts from 6:00 a.m. to 6:30 p.m. in the Hospital's freestanding emergency room laboratory from 2013 to 2016.  As a laboratory medical technologist, she ran tests on patient specimens, maintained analyzers, ran quality control, logged in specimens, and conveyed critical results to caregivers.

¶ 5    The lab was staffed around the clock, seven days a week, so that tests for acutely ill patients could be performed without delay. During her shifts, the small team at the Hospital relied on Witt "for everything regarding the laboratory; there [was] no other person to go to."

---

[1] Witt did not participate in the district court, nor has she participated in this appeal.  The Hospital does not assert any claims against her; she was included as a nominal party pursuant to section 24-4-106(4), C.R.S. 2019, because she was a party to the agency action.

2

### B. Meal Periods

¶ 6    In accordance with the Hospital's policy, Witt took thirty-minute meal periods. The duties and restrictions she had during those periods led to her wage complaint.

#### 1. The Hospital's Meal Period Policy

¶ 7    The Hospital's policy provided as follows:

> Patient care needs permitting, meal periods must be at least thirty (30) uninterrupted minutes in duration and are scheduled for employees working five (5) or more consecutive hours. Employees must be relieved of all work duties during the meal period. . . . Meal period interruptions that are considered "*de minimis*" will not be considered compensable time . . . .
>
> . . . .
>
> Meal periods are considered unpaid time and must be recorded in the timekeeping system. Employees will not be compensated for meal periods unless the meal is interrupted to perform work-related duties. If a non-exempt employee is interrupted, or misses a meal period to perform work, the employee will be paid for the entire scheduled meal period. Interruptions which are considered *de minimis* do not require full meal period payment. With prior management approval, an employee may consume an "on duty meal" while performing duties outside of clinical or patient care areas. The "on duty meal" time is paid.

¶ 8    To receive payment for missed or interrupted meals, employees were instructed to clock in, notify their manager, and/or submit a timekeeping adjustment form.  Witt used the timekeeping system on occasion to obtain compensation for interrupted meal periods.  None of those occasions is in dispute here.

2.    Use of Witt's Meal Periods

¶ 9    During her meal period, Witt could generally step out of the lab, use the breakroom, watch TV, read, make personal calls, eat, and rest.  As she stated in her wage complaint, however, she was the only laboratory technologist on duty during her shifts.  So, Witt was "basically 'on call'" during meal periods.  This meant she was required to (1) carry the lab phone and respond to all lab calls; (2) leave a sign at the lab instructing nurses to call her to return to work when they would drop off a specimen; and (3) answer and handle routine business calls for the lab, including answering questions from doctors, nurses, and paramedics about lab tests, equipment, and instruments.

¶ 10    Additionally, to ensure that Witt could promptly respond to these tasks, and because the lab phone she carried did not work outside of the building, she was not allowed the leave the Hospital

4

facility during her meal periods. Consequently, she could not pursue personal activities like running errands, going for a walk, or simply sitting at the picnic table just outside the facility.

## II. Procedural History

### A. Agency Action

#### 1. Witt's Wage Complaint

¶ 11 Witt filed a wage complaint with the Division on October 14, 2015, pursuant to section 8-4-111, C.R.S. 2019, seeking payment from the Hospital for all meal periods for which she had not been compensated.

¶ 12 Witt contended she was "on call" during her meal periods. She said that Hospital management "insist[ed]" that she clock out for meals and clock back in when she is interrupted. But, because clocking back in led to overtime pay, and the Hospital "[did] not want to pay" for overtime, managers "require[d]" her to try to take another meal break later in the shift. According to Witt, that was not practical because it would have required taking a meal break as much as eight to ten hours after her shift began. Witt also explained that she "did not want to give up her lunch break" because

I'm very hungry by that point; it is my one meal in the whole 12 and a half hours and I need to eat that meal even if that means gulp it down.

So I did not . . . if [an interruption] was something I could handle in, you know, 1 to 15 minutes then I was not going to clock back in to do that because I need to eat my food, otherwise my hot food is going down the kitchen sink or in the garbage can and that's my meal for the day. So I was not wanting to give up that food break. It's not a matter of just sitting in the breakroom and watching TV[,] it's a matter of putting food in your stomach so you don't faint.

¶ 13 Witt further alleged that her managers had "threatened" her to stop incurring overtime pay. According to Witt, her supervisor told her that the Hospital's meal period policy did not permit compensation for minor interruptions, and that she must stop clocking in when they occurred — that is, she must clock in again only to conduct lab testing.

## 2. The Hospital's Response

¶ 14 After Witt filed her complaint with the Division, the Hospital worked with her to address her concerns. By the end of 2015, the hospital implemented a new policy: Witt was no longer required to carry a phone or respond to non-emergency calls during her meal

6

periods. Instead, a charge nurse would handle the phone and not interrupt her meal periods absent a "life critical emergency." After this change, Witt believed the meal periods were "fair." Hence, her wage claim covered only meal periods between "October of '13 to December 30th of '15 when they changed the policy."

¶ 15 The Division notified the Hospital of Witt's claim in writing on January 28, 2016, solicited information for the investigation, and informed the Hospital that the notice served as a written demand for wages under section 8-4-111(5). After receiving an extension of time, the Hospital responded on February 25, 2016.

¶ 16 Among other things, the Hospital asserted that "while it has no reason to believe that Ms. Witt was not properly compensated," it had agreed to compensate her for "the meal periods she alleges that she took (i.e., was not paid for) and that she alleges were interrupted for pay periods ending 11/1/13 through 2/13/16 to satisfy any concerns on this issue." "[T]o fully resolve this matter," the Hospital paid Witt for all uncompensated meal periods in that timeframe, which totaled 136.

### 3.    The Citation

¶ 17    The Division's compliance investigator issued a "Notice of Determination and Enclosed Citation" (Citation) on December 14, 2016.  After quoting the MWO, the Citation (1) credited evidence that Witt was "regularly not paid for 'on duty' meal breaks" and had to "remain on call" during the relevant meal period; (2) found that the Hospital violated the MWO by not compensating her for all such periods; and (3) concluded that she "should have been compensated for all 'on-duty' meal breaks, whether she was interrupted or not." The Citation applied to meal periods through February 13, 2016.

¶ 18    The Citation also determined that the Hospital had paid all wages owed by the time of the Citation.  Yet, because the Hospital had not paid those wages within fourteen days of the written demand, the Citation advised the Hospital that it was required by statute to pay a penalty to Witt.  The compliance investigator calculated this penalty to total $4210, but she exercised the Division's statutorily granted discretion to reduce the penalty by 50 percent (the maximum amount) because the Hospital had paid Witt the wages due before the Citation.

### 4.    The Hearing and The Decision

¶ 19    The Hospital appealed the Citation through the administrative process, asserting that the Division had misinterpreted the MWO and had applied an unwritten rule in violation of the State Administrative Procedure Act (APA), §§ 24-4-101 to -108, C.R.S. 2019.  A Division hearing officer held a hearing, at which Witt testified as well as the Hospital's Director of Laboratory Services and Vice-President for Human Resources.

¶ 20    After receiving the evidence, the hearing officer issued a lengthy "Decision and Order" (Decision), agreeing that Witt's meal periods at issue were compensable under the MWO.  In particular, the hearing officer concluded that they were compensable under a "stringent" reading of the MWO's terms as well as under the more lenient "predominant benefit test" used by some federal courts when considering a federal regulation related to the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-219 (2018).  (The Hospital had advocated for the federal test.)

¶ 21    The Decision principally concluded that (1) "Witt was engaged in substantial work-related activities during her meal periods"; (2) the record showed that she was "on duty (in other words that

9

her meal breaks were not uninterrupted and duty free) during her meal periods"; and (3) and the compliance investigator had engaged in adjudication, not rulemaking, when resolving Witt's claim.

### B. Judicial Review

¶ 22 The Hospital sought judicial review of the Decision in the district court. Affirming the Decision, the court ruled that (1) "in its application of the plain language of the Wage Claim Act and MWO, the Division did not apply an erroneous legal standard, nor did it act arbitrarily and capriciously, nor contrary to any statutory or constitutional right"; (2) "the Division did not err in determining that Ms. Witt's meal periods constituted compensable on-duty meal periods under the MWO" and "the Division based its Decision on sufficient competent evidence"; (3) the Hospital failed to overcome the presumption favoring the regularity and validity of administrative proceedings and favoring the Division when resolving any reasonable doubts; (4) the Decision "is consistent with the relevant statutory and regulatory language and abides by the applicable statutory scheme (e.g. the [Wage Claim] Act and MWO)"; and, therefore, (5) there was no basis for setting aside the Decision.

### III. Did the Division Err in its Interpretation and Enforcement of the MWO?

¶ 23    On appeal to this court, the Hospital contends that the Division applied an erroneous interpretation of the MWO. The Hospital maintains that the MWO is ambiguous and, therefore, we should rely on federal authority construing a FLSA regulation. Doing so, the Hospital says, leads to the conclusion that Witt's meal periods were not compensable.

¶ 24    The Hospital has presented thoughtful points. Still, with one exception, we are not persuaded to set aside the Decision. Instead, we conclude that, under the MWO's plain terms, Witt's meal periods at issue were compensable. Hence, it is neither necessary nor appropriate to rely on federal law. With respect to one timeframe (January to February 2016), however, we reverse and remand because the Decision did not adequately address whether the meal periods were compensable.

### A. Legal Framework

¶ 25    The General Assembly has empowered the Division to promulgate regulations, among them wage orders. *Brunson v. Colo. Cab Co., LLC*, 2018 COA 17, ¶ 13; *see* § 24-1-121(1), C.R.S. 2019.

11

One such regulation, the MWO, implements the Colorado Wage Claim Act, §§ 8-4-101 to -123, C.R.S. 2019, and regulates the wages, hours, working conditions, and procedures for certain employers. *See Brunson,* ¶¶ 3, 13.

¶ 26 The MWO has been amended over time, but not in a manner relevant here. The pertinent MWO provision states:

> Employees shall be entitled to an uninterrupted and "duty free" meal period of at least a thirty minute duration when the scheduled work shift exceeds five consecutive hours of work. The employees must be completely relieved of all duties and permitted to pursue personal activities to qualify as a non-work, uncompensated period of time. When the nature of the business activity or other circumstances exist that makes an uninterrupted meal period impractical, the employee shall be permitted to consume an "on-duty" meal while performing duties. Employees shall be permitted to fully consume a meal of choice "on the job" and be fully compensated for the "on-duty" meal period without any loss of time or compensation.

Colo. Minimum Wage Order No. 35, 7 Code Colo. Regs. 1103-1(7).

### B. Standard of Review

¶ 27 When considering the Decision, we apply the same standard of review applied by the district court. *Gessler v. Grossman,* 2015 COA 62, ¶ 38, *aff'd,* 2018 CO 48. That is, "review is limited to the

12

decisions of the hearing officer and the [agency]." *Marshall v. Civil Serv. Comm'n*, 2016 COA 156, ¶ 10. Our task is a limited one — we may not reweigh the evidence before the Division. *See Bd. of Cty. Comm'rs v. O'Dell*, 920 P.2d 48, 53 (Colo. 1996); *Stor-N-Lock Partners # 15, LLC v. City of Thornton*, 2018 COA 65, ¶ 22.

¶ 28 Judicial review of the agency action in this case is governed by section 24-4-106. As relevant to the Hospital's claims, a reviewing court may set aside an agency action if it is arbitrary or capricious, in excess of statutory authority, not in accord with the procedures or procedural limitations of the APA or as otherwise required by law, an abuse or clearly unwarranted exercise of discretion, unsupported by substantial evidence, or otherwise contrary to law. § 24-4-106(7)(b); *see Rocky Mountain Retail Mgmt., LLC v. City of Northglenn*, 2017 CO 33, ¶ 29.

## C. Analysis

### 1. Interpretation of the MWO

¶ 29 We review administrative regulations de novo. *Brunson*, ¶ 10. "Our primary task in this review is to give effect to the promulgating body's intent." *Id.* In construing a regulation, we apply the same rules of construction that we would apply in interpreting a statute.

*Id.* As with a statute, if the regulation's language is clear and unambiguous, we do not resort to other rules of construction. *Id.*

¶ 30    In the absence of a statutory or regulatory definition, we construe a term according to its ordinary or natural meaning. *See Cowen v. People*, 2018 CO 96, ¶ 14 (construing a statute). When determining the plain and ordinary meaning of words, we may consider a definition in a recognized dictionary. *Id.* (citing a case that relied on Black's Law Dictionary).

¶ 31    As noted, the MWO defines a non-compensable meal period as one that is "uninterrupted and 'duty free.'" Colo. Minimum Wage Order No. 35, 7 Code Colo. Regs. 1103-1(7). If that were not clear enough, the MWO states further that "*employees must be completely relieved of all duties* and permitted to pursue personal activities to qualify as a non-work, uncompensated period of time." *Id.* (emphasis added). Therefore, if an employee has a duty to the employer during the period at issue, the period is compensable.

¶ 32    A "duty" is a "legal obligation that is owed or due to another and that needs to be satisfied; that which one is bound to do, and for which somebody else has a corresponding right." Black's Law Dictionary 637 (11th ed. 2019). The Hospital's counsel at oral

14

argument in this appeal agreed that, under this definition, Witt had duties during her meal periods (e.g., she had to respond to phone calls to the lab). *See also* Webster's Third New International Dictionary 705 (1969) ("Duty" includes "obligatory tasks, conduct, service, or functions enjoined by order or usage according to . . . occupation or profession.").[2]

¶ 33    Even so, the Hospital contends that the MWO's language is ambiguous because "duty" and "duties" are susceptible of more than one interpretation.  The Hospital posits that "duties" in this context could mean either "(1) those primary tasks which the employee was hired to perform (here, lab testing) or (2) any ancillary work-related activity (here, carrying a phone and remaining on site)."[3]  Given this alleged ambiguity in the MWO, the Hospital urges us to apply the predominant benefit test used by some federal courts when interpreting federal law pertaining to employee meal breaks under the FLSA.  *See, e.g., Castaneda v. JBS USA, LLC*, 819

---

[2] We except the meal periods in 2016 from this conclusion, for reasons we will discuss later in the opinion.

[3] Additionally, the Hospital asks us to consider the phrase "on-call meal periods," which the Hospital encloses in quotation marks.  But that phrase is not in the MWO.

F.3d 1237, 1253 (10th Cir. 2016). The predominant benefit test asks whether the employee is primarily engaged in work-related duties such that the meal time is spent predominantly for the employer's benefit. *Id.*

¶ 34    Nothing in the plain meaning of the term "duty," however, suggests a distinction between "primary" obligations and "ancillary" obligations. If the employee is obligated to perform the task — subject to possible discipline if he or she refuses — the task is a duty. Indeed, at least one federal court has agreed with this strict reading of the MWO. *See Sobolewski v. Boselli & Sons, LLC*, 342 F. Supp. 3d 1178, 1185 (D. Colo. 2018). Rejecting the predominant benefit test, the court recognized that the MWO provides a "completely relieved of all duties" standard. *Id.* We too do not discern ambiguity in the MWO, especially given that such a stringent standard is consistent with Colorado law. "Colorado provides more employee protection than does federal law, and the Department has published clear persuasive evidence of its intent to provide greater protections than those provided under the [FLSA]." *Brunson,* ¶ 5. As a result, we have no reason to consult other

16

interpretative aids, such as some federal courts' view of allegedly analogous federal regulations.

¶ 35 Finally, the concerns raised by the Hospital do not convince us that applying the MWO's plain language will lead to absurd results. *Cf. City of Westminster v. Dogan Constr. Co.*, 930 P.2d 585, 590 (Colo. 1997) ("Words and phrases should be given effect according to their plain and ordinary meaning, and 'we must choose a construction that serves the purpose of the legislative scheme, and must not strain to give language other than its plain meaning, unless the result is absurd.'") (citation omitted). The Hospital points out that the MWO applies only to private — not public — hospitals. *See* Colo. Minimum Wage Order No. 35, 7 Code Colo. Regs. 1103-1(2) (excluding government employers from definition of employer). So, the Hospital argues that adopting a strict completely-relieved-of-all-duties interpretation of the MWO would lead to the "discordant" and "absurd result of public hospital employees being paid less than private employees for performing exactly the same job, *or* public employees receiving an unpaid break and private employees being paid to work through their lunches."

17

¶ 36    Yet, the legislature has also chosen to distinguish between

public and private employers when it comes to wages.  *See, e.g.,*

§ 8-4-101(6), C.R.S. 2019.  That is a quintessential policy choice.

In fact, the Hospital recognizes that, in certain contexts, "a sound

policy consideration may conceivably exist for differential

treatment."  We leave to the legislature and the Division the policy

decision whether the result posited by the Hospital here is likely,

new, or desirable.  *Cf. Rare Air Ltd., LLC v. Prop. Tax Adm'r*, 2019

COA 134, ¶ 16 ("Judicial deference to an agency's interpretation of

a statute 'is appropriate when the statute before the court is subject

to different reasonable interpretations and the issue comes within

the administrative agency's special expertise.'" (quoting *Huddleston

v. Grand Cty. Bd. of Equalization*, 913 P.2d 15, 17 (Colo. 1996))).

¶ 37    For the same reason, we decline to reject a plain language

interpretation of the MWO on the ground that applying the federal

predominant benefit test might be a good idea.  The Hospital says

that only this federal test "appropriately balances protecting

employees with the operational realities of workplaces" and fits "the

policy concerns and factual realities of the modern workplace —

where thirty-minute meal periods are inherently limited, and

employees are almost always subject to potential work-related interruptions." In response, the Division contends that the MWO's plain terms incorporate the flexibility the Hospital desires by allowing an employer not to give an employee a duty-free meal break but only an on-duty meal period, for which the employee must be compensated. We do not wade into this debate. We simply apply the MWO's plain language and leave to the policymakers the question whether the MWO appropriately accommodates "the modern workplace."

### 2. Witt's Pre-2016 Meal Periods

¶ 38    Having decided that the Division did not err by applying the MWO's plain language, we next consider whether the Division abused its discretion given the evidence presented. An agency abuses its discretion only if "no competent evidence in the record supports its ultimate decision." *Stor-N-Lock*, ¶ 22. "'No competent evidence' means that the ultimate decision of the administrative body is so devoid of evidentiary support that it can only be explained as an arbitrary and capricious exercise of authority." *Ross v. Fire & Police Pension Ass'n,* 713 P.2d 1304, 1309 (Colo. 1986); *Stor-N-Lock,* ¶ 22.

¶ 39     Put another way, we must sustain the agency's decision if it is supported by substantial evidence in the record. *Farny v. Bd. of Equalization*, 985 P.2d 106, 109 (Colo. App. 1999). Substantial evidence is "the quantum of probative evidence that a fact finder would accept as adequate to support a conclusion, without regard to the existence of conflicting evidence." *Stiles v. Dep't of Corr., Denver Reception & Diagnostic Ctr.*, 2019 COA 10, ¶ 13 (citation omitted). "[W]e presume the validity and regularity of administrative proceedings and resolve all reasonable doubts as to the correctness of administrative rulings in favor of the agency." *Gessler*, ¶ 11.

¶ 40     Considering the strict uninterrupted *and* completely-relieved-of-all-duties meaning of the MWO, the record supports the hearing officer's conclusion that Witt's pre-2016 meal periods were compensable. The hearing testimony showed that Witt was the only laboratory medical technologist on staff during her regular shift. During her meal periods, she was not permitted to leave the hospital and she was required to carry the lab phone and respond promptly to all lab calls, including requests for life-critical testing as well as non-critical calls.

¶ 41    For example, Witt testified that couriers would come to the breakroom looking for blood specimens that had to be delivered to different hospital facilities, requiring her to leave her lunch and go back to the lab.  Witt would answer phone calls from service representatives conducting follow-up calls about the performance of instruments.  Nurses would stop by the lunchroom seeking Witt's assistance with the supplies and operation of handheld equipment like glucometers and i-STATs.  Also, because the lab shared supplies with the main hospital, Witt would have to respond to requests about inventory of items like reagent cartridges.  Other times, ambulances would arrive with patients in life-threatening emergencies, requiring Witt to immediately respond to the trauma room.  In short, "[w]hen you are the only laboratory person on duty in a building," Witt said, "you are required to assist with everything that is needed regarding the laboratory."

¶ 42    To the extent the Hospital suggests that it was improper for the hearing officer to consider evidence presented for the first time at the hearing, we disagree.  As the Division notes, the applicable statute and regulation give the hearing officer wide discretion to

21

hear evidence, whether "new" or not.  *See* § 8-4-111.5(2)-(3), C.R.S. 2019; Dep't of Labor & Emp't Rule 6.5, 7 Code Colo. Regs. 1103-8.

¶ 43     The Hospital also contends that the hearing officer ignored evidence because the officer did not distinguish between the different types of uncompensated meal periods at issue, including (1) those involving "non-critical interruptions" and (2) those without interruptions.  We are not persuaded because these distinctions were immaterial under a strict reading of the MWO.  The former period must be compensated because the MWO requires an "uninterrupted" meal period,[4] while the latter period was compensable because the MWO requires the employee to be completely relieved of all duties during the meal period and permitted to pursue personal activities, regardless of whether she is interrupted.  Colo. Minimum Wage Order No. 35, 7 Code Colo. Regs.

---

[4] The Hospital argues that, under its written policy, Witt would have been compensated for these "non-critical" interruptions had she clocked in again.  The policy, however, did not permit compensation for "*de minimis*" interruptions.  In any event, the evidence also permitted a finding that her supervisors pressured her not to incur overtime pay and advised her not to clock in for minor interruptions but only to do so when she had to return to the lab to conduct testing.

1103-1(7). The evidence supported a finding that Witt had duties and restrictions during the meal periods.

¶ 44 Finally, we need not address whether the hearing officer correctly concluded that the meal periods were also compensable under the predominant benefit test. As explained, that test does not apply.

¶ 45 In sum, given its record support, we may not set aside the hearing officer's determination that Witt's pre-2016 meal periods were not uninterrupted and duty-free and, therefore, were compensable under the MWO. *See Weld Air & Water v. Colo. Oil & Gas Conservation Comm'n*, 2019 COA 86, ¶ 33 ("[W]e defer to an agency decision that involves 'factual and evidentiary matters within an agency's specialized or technical expertise'" — thus, "if conflicting inferences can be drawn from the record evidence, we will not second guess an agency's choice between two opposing views.") (citation omitted).

### 3. Witt's 2016 Meal Periods

¶ 46 Recall that, by December 30, 2015, and through her retirement in February 2016, the Hospital modified Witt's meal period duties. After December 30, 2015, she no longer carried a

phone during her meal periods.  Instead, a charge nurse carried the phone during that time.  If an emergency arose, the nurse would interrupt Witt, who would clock back in and be paid.  If a call was not urgent, the nurse would instruct the caller that Witt was not available until the meal period concluded.  So, Witt remained subject to potential emergency interruptions and a geographic restriction, but no longer carried a phone or experienced non-critical interruptions.

¶ 47    Witt testified at the hearing that, after this change, the meal periods "became fair," and she requested compensation only through December 30, 2015.  She also acknowledged the Hospital had actually compensated her "all the way to February 11th, 2016." So, she believed "they more than fairly compensated me for that." The Hospital made these payments before receiving the Citation.

¶ 48    In the Citation, the compliance investigator ruled that Witt "was owed" compensation for meal periods through February 13, 2016.  Later, the hearing officer found that the Hospital "voluntarily chose to pay" Witt for meal periods after December 30, 2015, and that the compliance investigator "assumed the same facts and circumstances were applicable during the entire time frame at

issue" because the changed circumstances after December 2015 were not adequately brought to the investigator's attention. Then, even though evidence of these changed circumstances was presented to the hearing officer, she "ma[de] no finding" as to whether the meal periods after December 2015 were compensable. Yet, the hearing officer ultimately "affirmed" the Citation in full. In other words, even though the Hospital appealed all aspects of the Citation (including as to the 2016 meal periods) to the hearing officer, she did not make a finding as to the 2016 periods but let the Citation stand.

¶ 49    Likewise, the Division on appeal does not take a position on whether Witt's meal periods in 2016, after the policy change, were compensable. In any event, the hearing officer affirmed the Citation's ruling that those periods were compensable, while declining to explain why. So, as the Decision stands, the Hospital owed wages to Witt for the 2016 meal periods, even after the policy change. Although Witt has retired and the Hospital does not seek to recover money from her, the Hospital deserves to know, via an analysis accounting for the 2016 facts, whether those meal periods

25

were compensable under the MWO. This knowledge could impact the Hospital's current and future policies on meal periods.

¶ 50 Because the Decision does not adequately consider whether Witt's meal periods in 2016 were compensable, we set aside the Decision with respect to that timeframe only, and we remand with directions to return the case to the Division to consider this issue.

### 4. The Hospital's Remaining Contentions

#### a. The Division's Allegedly Inconsistent Interpretations of the MWO

¶ 51 The Hospital contends that the Division's allegedly inconsistent interpretations of the MWO in this case render the Decision arbitrary and capricious. The Hospital distills three different versions of the Division's interpretation of the MWO from the Citation, the Decision, and the Division's answer brief in the district court. These various versions, the Hospital asserts, show the Division's "fluctuating analysis" and confirms that "sufficient standards are lacking to guide [the Division's] MWO enforcement." According to the Hospital, the Division's changing standards leave it and other similarly situated employers "in the dark." That is, employers are deprived of fair notice of what standards or criteria

26

apply to the Division's enforcement of the MWO. We are not convinced, however, that the Division's view of the MWO has changed significantly throughout this case.

¶ 52 In the relatively concise Citation, the Division's compliance investigator applied the MWO's plain terms, without any suggestion that they lacked clarity. The investigator found that Witt was not paid for meal periods during which she was required to remain on call and could be interrupted to return to work at any time. The investigator decided that Witt "should have compensated for all 'on-duty' meal breaks, whether she was interrupted or not."

¶ 53 In the Decision, the hearing officer addressed the Hospital's argument — raised for the time before the hearing officer — that the predominant benefit test from federal law should be used when applying the MWO. As the Hospital points out, the hearing officer said, "Because of [the] material difference between the state and federal regulations, it is not clear whether the predominant benefit test is the appropriate standard for interpreting" the MWO. Doubting that this test should apply, the hearing officer stated that "the plain language of the [MWO] suggests that the more stringent 'completely relieved from duty' test should apply." And, under the

more stringent test, the hearing officer found it "easy to conclud[e]" that Witt "was not completely relieved from duty and [the compliance investigator] made no error in determining [Witt's] meals breaks were compensable." Still, "in the interest of thoroughness," the hearing officer also analyzed the facts under "the more lenient predominant benefit test" and concluded that Witt's meal breaks were compensable under that standard.[5]

¶ 54     In the district court, the Division (like the hearing officer) took the position that, under the MWO's plain language, Witt's meal periods were compensable because she was "not completely relieved of all duties" and could not pursue personal activities during meal breaks that other employees could, such as running errands, going for a walk, or sitting outside. As the hearing officer had, the Division discussed the "significant and substantive difference" between the MWO and the federal regulation. The Division urged

---

[5] The hearing officer emphasized, "I do not decide whether [the predominant benefit test] is the appropriate test to interpret [the MWO]. I examine the facts of this case using the predominant benefit test only to demonstrate that the hospital's appeal fails even under the more lenient test."

the district court to simply apply the plain terms of the MWO, without regard to the predominant benefit test.

¶ 55     The Division's positions as this case has progressed do not reflect a sea change.  We see no relevant difference between the Citation and the Division's district court argument.  Both relied on the MWO's plain language, though the Division's district court brief was more thorough.  As the Hospital correctly observes, the hearing officer said she was not entirely sure whether the predominant benefit test should be used to apply the MWO.  Even so, the hearing officer found that MWO's plain language indicated otherwise, and the hearing officer concluded that Witt's meal periods were compensable under the MWO's plain terms.  Then, the hearing officer analyzed the facts under the predominant benefit test merely to illustrate that the meal periods were also compensable under the Hospital's preferred test.

¶ 56     At every step, the Division advised the Hospital that Witt's meal periods at issue were compensable.  There should be no doubt about the Division's position.  The Division has also made clear that it does not view the MWO as ambiguous and will apply its plain terms in a strict, literal manner.  Given all this, we conclude that

the Division has not arbitrarily and capriciously enforced the MWO in this case.[6]

### b. Allegedly Improper Rulemaking

¶ 57    Next, the Hospital argues that the Division applied "an unwritten rule against an aggrieved party through adjudication." By doing so, the Hospital concludes, the Division engaged in improper rulemaking in violation of the APA. We disagree.

¶ 58    "[T]here is not always a clear distinction between agency adjudication and agency rule-making." *Trans Shuttle, Inc. v. Pub. Utils. Comm'n*, 89 P.3d 398, 407 (Colo. 2004). A "rule" is "the whole or any part of every agency statement of general applicability and future effect implementing, interpreting, or declaring law or policy or setting forth the procedure or practice requirements of any agency." § 24-4-102(15), C.R.S. 2019. "'Adjudication' means the procedure used by an agency for the formulation, amendment, or

---

[6] In a footnote in its opening brief, the Hospital criticizes the penalty assessed against it for not paying Witt's claim in a timely manner. Because, in our view, this criticism is unsupported by any substantial argument, we decline to address it further. *Taylor v. Taylor*, 2016 COA 100, ¶ 13; *see People v. Wallin*, 167 P.3d 183, 187 (Colo. App. 2007) (declining to address arguments presented in a perfunctory or conclusory manner).

repeal of an order and includes licensing." § 24-4-102(2). Stated differently, an adjudication "involves a determination of rights, duties, or obligations of identifiable parties by applying existing legal standards to facts developed at a hearing conducted for the purpose of resolving the particular interests in question." *Trans Shuttle*, 89 P.3d at 408 (citation omitted).

¶ 59 To determine whether a proceeding constitutes rulemaking or adjudication, "we look to the actual conduct and effect of the particular proceeding, as well as to the purposes for which the proceeding was brought." *Id.* (citation omitted). The mere fact that the proceeding may have collateral prospective effects on other similarly situated parties does not convert an adjudication into rulemaking. *Id.*

¶ 60 In this case, the Division applied the literal language of the MWO, a duly promulgated and written rule. The Division determined that the Hospital had violated this rule with respect to Witt and the specific meal periods at issue. The Division's ruling applied only to those prior violations and only to the Hospital and Witt. And the facts required to resolve the issues were particular to this proceeding. *See id.* While perhaps the Decision in this

proceeding may have effects on other similarly situated employers, the proceeding applied only to the Hospital, relying on facts specific to the Hospital's operations.  *See id.*

¶ 61    Still, the Hospital maintains that the Division "confirmed" that it was not applying a previously determined rule "by relying on different standards at every turn."  We have, however, rejected the Hospital's argument that the Division applied different standards. Therefore, we conclude the Division engaged in adjudication, not rulemaking.  *See id.*

## IV.    Conclusion

¶ 62    The portion of the district court's order affirming the Decision as to Witt's 2016 meal periods is reversed, and the case is remanded with directions to return it to the Division for further proceedings consistent with this opinion.  In all other respects, the court's order is affirmed.

JUDGE DAILEY and JUDGE MILLER concur.