24CA1083 Kuhr v ICAO 10-31-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA1083
Industrial Claim Appeals Office of the State of Colorado
DD No. 32313-2023

Jeffrey Kuhr,

Petitioner,

v.

Industrial Claim Appeals Office of the State of Colorado and Mesa County,

Respondents.

ORDER AFFIRMED

Division VII
Opinion by JUDGE SCHUTZ
Tow and Pawar, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 31, 2024

Coleman Quigley & Foster, LLC, Isaiah Quigley, Stuart R. Foster, Grand Junction, Colorado for Petitioner

No Appearance for Respondent Industrial Claim Appeals Office

Todd M. Starr, County Attorney, Grand Junction, Colorado, for Respondent Mesa County

¶ 1 Jeffrey Kuhr seeks review of a final order of the Industrial Claim Appeals Office (the Panel) disqualifying him from receiving unemployment insurance benefits pursuant to section 8-73-108(5)(e)(XX), C.R.S. 2024 (foreclosing benefits where a claimant's failure to meet established job performance or other defined standards resulted in employment termination). We affirm the Panel's order.

## I.  Background

¶ 2 A clear recitation of the controlling facts requires distinguishing among the following governmental entities: Mesa County (County), the Board of County Commissioners for Mesa County (BOCC), the Mesa County Public Health Department (Health Department), and the Mesa County Board of Public Health (Board of Public Health). We briefly address those distinctions:

- The County, acting through the BOCC, appoints the members of the Board of Public Health. § 25-1-508(2)(a)(I), C.R.S. 2024.

- The Board of Public Health appoints the Public Health Director, who directs the Health Department. §§ 25-1-508(5)(c)(I), -509(1)(a), C.R.S. 2024.

1

- The Public Health Director serves at the pleasure of the Board of Public Health.  § 25-1-508(4)(a).

### A.  Employment Background

¶ 3   The following facts are undisputed.  Between 2011 and 2023, Kuhr served as the Public Health Director for the Health Department.  In 2022, the County Attorney retained an auditor to investigate the Health Department's hiring and spending processes.  The auditor determined the Health Department, and specifically Kuhr, had deviated from the County's protocols in various respects on multiple occasions.  On February 3, 2023, after reviewing the auditor's report (Auditor's Report), the Board of Public Health adopted a "Plan of Action" to improve the Health Department's processes.  A few months later, on April 21, 2023, the Board of Public Health approved a new employment contract (2023 Employment Contract) with Kuhr, for a term beginning May 1, 2023, and ending April 30, 2024.

¶ 4   The BOCC wrote to the Board of Public Health, explaining that the Plan of Action failed to sufficiently address the Health Department's dysfunction and demanding Kuhr's termination.  Shortly thereafter, four of the five members of the Board of Public

Health resigned. The following day, the BOCC replaced those members. A few days later, the Board of Public Health voted to place Kuhr on administrative leave. Kuhr threatened legal action against the County, and in short order, the BOCC, Board of Public Health, and Kuhr executed a settlement and release agreement (Settlement Agreement), whereby Kuhr agreed to accept a payment in exchange for separating from his employment and releasing his claims against the BOCC and the County.

¶ 5     Kuhr subsequently filed an application for benefits with the Division of Unemployment Insurance (Division), which is the subject of this appeal.

### B.     Procedural History

¶ 6     On October 30, 2023, a deputy for the Division approved Kuhr's claim for benefits. The Division mailed a copy of that decision to the County, which timely appealed the deputy's decision and requested an evidentiary hearing on the proximate cause of Kuhr's employment separation.

¶ 7     After reviewing the evidence, the hearing officer issued an order disqualifying Kuhr from receiving benefits because his separation was proximately caused by his failure to meet

established job performance standards, and because he exercised control over the circumstances surrounding his separation. Specifically, the hearing officer found that Kuhr repeatedly failed to comply with the County's financial and procurement policies, and that, because he exercised control over his actions in connection with these failures, he was "at fault" for the separation. Accordingly, the hearing officer adjudicated Kuhr disqualified from receiving benefits, per section 8-73-108(5)(e)(XX).

¶ 8      Kuhr appealed the hearing officer's decision to the Panel. In the context of that appeal, Kuhr argued that the hearing officer erred as a matter of law by referencing the Auditor's Report in her proximate cause findings. He also argued that the hearing officer erred by concluding that the County had been his employer. The Panel affirmed the hearing officer's order.

## II.      Analysis

¶ 9      On appeal, Kuhr argues that (1) the County was not an "interested party" authorized to appeal the Division deputy's decision to the hearing officer; (2) the hearing officer erred by relying on the Auditor's Report to determine that Kuhr was responsible for his separation (and the Panel subsequently erred by

4

affirming those findings); and (3) the Settlement Agreement precluded the County from challenging Kuhr's benefits award. None of these arguments establishes a basis for setting aside the Panel's order.

## A. Standard of Review

¶ 10    As relevant here, under section 8-74-107(6), C.R.S. 2024, we may only set aside the Panel's decision if (1) the hearing officer's factual findings do not support the Panel's legal conclusions; (2) the Panel "acted without or in excess of its powers"; or (3) the decision is erroneous as a matter of law.  *Id.*; *see also* § 8-74-107(4); *Yotes, Inc. v. Indus. Claim Appeals Off.*, 2013 COA 124, ¶ 10.

## B. Interested Party

¶ 11    As Kuhr notes, section 8-74-103(1), C.R.S. 2024, authorizes only "interested part[ies]" to appeal a Division deputy's decision to award or deny unemployment benefits.  Kuhr argues that the County could not have qualified as an "interested party" because it was not his "employer."  We are not persuaded.

¶ 12    Contrary to Kuhr's suggestion, whether the County qualified as an "interested party" authorized to challenge the Division deputy's decision turns solely on that term's definition under the

5

Employment Security Act (Act), without reference to real-party-in-interest principles or traditional standing principles. Those principles generally apply to claimants, and the County is not a claimant here. C.R.C.P. 17(a); 13A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 3531 (3d ed. 1998).

¶ 13   Under section 8-70-103(17)(a), C.R.S. 2024, an "interested party" to any benefits decision includes the claimant, the Division, and "any employer who has complied with the reporting requirements of the division with respect to wages or other information regarding such individual."

¶ 14   An "employer" includes an individual or organization who paid a certain amount of wages to the claimant in a certain timeframe or employed the claimant for "some portion of the day" for at least twenty days over the course of twenty weeks (with each of the twenty days falling in a different week). §§ 8-70-103(9), 113(1)(a)(II), C.R.S. 2024.

¶ 15   The Division's reporting requirements mandate, among other things, that "employers" file quarterly reports identifying all wages paid to employees (and the employees' social security numbers). Dep't of Labor & Emp. Regs. 7.2.3, 7.2.4.

¶ 16    The Division is responsible for identifying "interested parties" "[u]pon [its] receipt of a claim." § 8-74-102(1), C.R.S. 2024. "Claims" under the Act include "valid initial claim(s)" and two types of reopened claims. § 8-70-103(7), -111, 112, C.R.S. 2024. Importantly, a "valid initial claim" only exists where a claimant has established that he was paid a certain amount of wages from a named employer in a certain timeframe. *Id.*; §§ 8-70-111, 8-73-107(1)(e), C.R.S. 2024. A mere application requesting benefits is not a "valid initial claim." It only becomes such once the Division deputy confirms the named employer actually paid the declared wages by cross-referencing the application with the named employer's quarterly wage reports or other payroll information. §§ 8-74-102(1), 8-70-103(7), 8-70-111(2)(a), 8-70-112(1)(a), C.R.S. 2024. Thus, the very existence of a viable unemployment benefits claim[1] is predicated on the Division first verifying the identity of the employer who paid wages. *Id.*

---

[1] Consistent with the Panel's terminology, this opinion references Kuhr's "claim," rather than his "valid initial claim." As discussed, *supra*, the former term subsumes the latter.

7

¶ 17    Here, the record indicates Kuhr represented to the Division that the County was his employer for purposes of establishing a claim and that the Division confirmed that representation was accurate. This is evidenced by Division records identifying Kuhr's application as a "claim." Though the record does not contain Kuhr's initial application, it includes a Division-generated document identifying the claim number as 2023-1, Kuhr as the claimant, and the County as the employer.

¶ 18    "We presume the validity and regularity of administrative proceedings . . . ." *HCA-HealthONE LLC v. Colo. Dep't of Labor & Emp.*, 2020 COA 52, ¶ 39. Accordingly, we presume the Division classified Kuhr's application as a "claim" after verifying that the County was Kuhr's employer, per statutory protocol. *Id.*; §§ 8-74-102(1), 8-70-103(7), 8-70-112.

¶ 19    Neither party contests that a "claim" exists here, and Kuhr continues to assert that he has a "claim" for benefits. But the Division's verification of his application as a "claim" was necessarily predicated on Kuhr's representation that the County was his "employer." Indeed, at oral argument, Kuhr's counsel acknowledged that the County paid Kuhr's wages. Accordingly, we

conclude that Kuhr is judicially estopped from now arguing that the County was not his "employer." *See Arko v. People*, 183 P.3d 555, 560 (Colo. 2008). For both logic and equity reasons, Kuhr cannot argue for benefits based on his "claim" against the County, while simultaneously denying that the County employed him. *See id.* One position precludes the other. Accordingly, we reject his contention that the County was not an interested party authorized to appeal the Division deputy's decision.

¶ 20    Moreover, even if Kuhr were not estopped from contesting that the County was his employer, his argument would fail. As the appellant, Kuhr bears the burden of providing us a record supporting his assertion that the County was not his employer, as defined by the Act. *See Schuster v. Zwicker*, 659 P.2d 687, 690 (Colo. 1983) ("It is the obligation of the party asserting error in a judgment to present a record that discloses that error, for a judgment is presumed to be correct until the contrary affirmatively appears."). We note that sections 8-74-106 and 8-72-107, C.R.S. 2024, expressly allowed Kuhr reasonable access to the Division's records. And, though the statutory scheme tasks the Panel with filing the record on appeal, C.A.R. 10(f)(2) authorized Kuhr to file a

motion to supplement the record. We see no evidence that Kuhr made any attempt to provide us a record sufficient to review the asserted error. Accordingly, we presume the evidence supports the hearing officer's and Panel's decisions. *See Schuster*, 659 P.2d at 690.

### C. Whether the Hearing Officer Appropriately Referenced the Auditor's Report

¶ 21 Kuhr argues the incidents cited in the Auditor's Report "did not serve as any basis for his separation of employment," and the hearing officer thus erred in so finding. However, because substantial evidence in the record supports the hearing officer's finding, we cannot set aside the Panel's order affirming it. Specifically, at the hearing, a County Administrator testified that the "report and violations found . . . led to the termination agreement." This testimony supports the finding that incidents identified in the Auditor's Report proximately caused Kuhr's employment separation.

¶ 22    Kuhr also argues that, in entering into the 2023 Employment Contract, the Board of Public Health and/or the County[2] waived the right to terminate Kuhr based on incidents identified in the Auditor's Report.  However, he points to no specific language in that contract supporting his argument, nor does he cite any legal authority for the notion that an employer that enters into a renewed employment agreement irrefutably waives the right to terminate an employee based on past conduct.  Nor does he provide analysis in support of his conclusion.  *Vallagio at Inverness Residential Condo. Ass'n, Inc. v. Metro. Homes, Inc.*, 2017 CO 69, ¶¶ 39-40 (we do not consider conclusory propositions devoid of legal citations or analysis).  We therefore reject the contention.

¶ 23    Kuhr then appears to invoke the doctrine of equitable estoppel for the proposition that the existence of the 2023 Employment Contract precluded the hearing officer's finding that incidents documented in the Auditor's Report proximately caused Kuhr's employment separation.  Again, Kuhr's argument lacks legal

---

[2] The 2023 Employment Contract lists Kuhr and the Health Department as the parties thereto.  Kuhr argues the Board of Public Health, and perhaps the County, waived the right to terminate him based on incidents the Auditor's Report identified.

support or development, and it is unclear which actor he believes is subject to the doctrine. Thus, we cannot consider this argument. *Id.* In short, we perceive no error in the Panel affirming the hearing officer's proximate cause finding.

### D. Whether the Settlement Agreement Precluded the County from Challenging Kuhr's Benefits Award

¶ 24 Kuhr contends specific terms in the Settlement Agreement precluded the County from challenging Kuhr's entitlement to benefits. The interpretation of a written contract presents a question of law that we review de novo. *See EnCana Oil & Gas (USA), Inc. v. Miller*, 2017 COA 112, ¶ 10. When interpreting a contract, such as the Settlement Agreement, our primary task is to give effect to the parties' intent. *Bledsoe Land Co. LLLP v. Forest Oil Corp.*, 277 P.3d 838, 842 (Colo. App. 2011). We discern that intent from the language of the instrument itself, giving the words therein their plain and generally accepted meanings. *Id.*

¶ 25 Kuhr first points to a provision in the Settlement Agreement's recitals, articulating the parties' intention "to resolve all potential claims . . . that Mesa County may have against Kuhr[.]" It is unclear why this provision would foreclose the County's challenge

12

to Kuhr's entitlement to benefits because the challenge does not constitute a legal claim. Again, Kuhr provides no legal analysis to support his contention, and we decline to address it further. *People v. Wallin,* 167 P.3d 183, 187 (Colo. App. 2007) (declining to address perfunctory, conclusory arguments).

¶ 26 Next, Kuhr highlights a Settlement Agreement provision that neither Kuhr nor the County admit any wrongdoing. This provision does not state that the County agrees to forego challenging Kuhr's entitlement to benefits, and Kuhr fails to assist our understanding via legal analysis. Perceiving no obvious basis for this argument, and lacking analysis to guide our review, we decline to further consider it. *Id.*

¶ 27 Finally, Kuhr points to a provision stating, "Kuhr does not release the right to receive unemployment benefits or vested pension benefits if Kuhr is entitled to either or both." By its plain language, this provision concerns benefits to which Kuhr "is entitled." It does not guarantee his entitlement to benefits or otherwise enlarge his rights under the Act. Nor does it constrict the County's rights under the Act, including the right to challenge Kuhr's entitlement to benefits. We perceive no ambiguity in this

provision, and we must interpret it as written rather than adding terms the parties did not include. *See SI Prop. E., Inc. v. Simpson*, 938 P.2d 168, 173 (Colo. 1997).

### III. Disposition

¶ 28 The Panel's order is affirmed.

JUDGE TOW and JUDGE PAWAR concur.