24CA0754 Nichols v ICAO 01-30-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA0754
Industrial Claim Appeals Office of the State of Colorado
WC No. 5-228-938-002

Janell Nichols,

Petitioner,

v.

Industrial Claim Appeals Office of the State of Colorado and State of Colorado
Department of Public Health & Environment,

Respondents.

ORDER AFFIRMED

Division III
Opinion by JUDGE BERGER*
Dunn and Tow, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced January 30, 2025

Boesen Law LLC, Bradley Unkeless, Greenwood Village, Colorado, for Petitioner

No Appearance for Respondent Industrial Claim Appeals Office

Philip J. Weiser, Attorney General, Tina R. Oestreich, Assistant Attorney
General, Denver, Colorado, for Respondent Colorado Department of Public
Health & Environment

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1    In this workers' compensation action, Janell Nichols challenges a final order of the Industrial Claim Appeals Office (Panel) denying her claim.  We affirm.

## I.    Relevant Facts and Procedural History

¶ 2    The following facts are undisputed.  Nichols, a trained epidemiologist and infection preventionist, worked for the Colorado Department of Public Health and Environment (CDPHE) as a Prevention Unit Manager.  She worked mainly at a computer, performing data and research analysis, and drafting documents.

¶ 3    On May 12, 2014, Nichols reported a work-related injury to CDPHE, pursuant to the Colorado Workers' Compensation Act (Act), §§ 8-40-101 to -47-209, C.R.S. 2024.  Specifically, Nichols complained of pain, numbness, and tingling in her wrists and fingers.  Nichols visited two physicians in 2014 and received varying diagnoses.  Dr. John Aschberger diagnosed Nichols with "very mild" carpal tunnel syndrome (CTS) in the right wrist only.  Dr. Edmund Rowland diagnosed her with "probable carpal tunnel syndrome on both sides."  Neither physician opined as to the cause of Nichols's symptoms.  Nichols concluded her medical treatment that year, without filing a claim for compensation under the Act.

¶ 4 Approximately eight years later, on October 24, 2022, Nichols again reported an injury to CDPHE. In that report, Nichols complained of CTS in "both wrists," with increased pain and numbness in the left. Multiple physicians evaluated Nichols. She received diagnoses of bilateral CTS, median neuropathy, lateral epicondylitis on both sides, and left cubital tunnel syndrome. Nichols made a formal request for compensation under the Act, which CDPHE contested, and the matter went to a hearing before an administrative law judge (ALJ).

## A. The ALJ's Order

¶ 5 The ALJ reviewed evidence related to (1) Nichols's claim that, beginning in 2022, her job aggravated her pre-existing CTS and therefore entitled her to compensation under the Act; and (2) CDPHE's affirmative defense alleging that Nichols failed to timely file her claim under the limitations period that section 8-43-103(2), C.R.S. 2024 prescribes. Following the hearing, the ALJ issued an order denying Nichols's claim and also denying CDPHE's affirmative defense. The ALJ found by a preponderance of the evidence that Nichols timely filed her claim but failed to meet her burden of demonstrating that her job caused her symptoms.

¶ 6     In ruling on CDHPE's affirmative defense, the ALJ noted that the two-year limitation period begins "when the claimant, as a reasonable [person], should recognize the nature, seriousness[,] and probable compensable character of [the] injury." *City of Boulder v. Payne*, 426 P.2d 194, 197 (Colo. 1967); *see* § 8-43-103(2), C.R.S. 2024.  After recapping Nichols's testimony regarding her experience of her symptoms, the ALJ found that Nichols reasonably recognized the foregoing when she suffered a flare-up of her symptoms in October 2022 and could no longer alleviate the pain.

¶ 7     However, in ruling on Nichols's claim for compensation, the ALJ noted that only one provider, Dr. Carlos Cebrian, had performed "a formal causation assessment" pursuant to the Division of Workers' Compensation's (Division) causation guidelines (promulgated at Dep't of Lab. & Emp. Rule 17-5(D)(3), 7 Code Colo. Regs. 1101-3:17-5(D)(3)).  Dr. Cebrian opined that, in all medical probability, Nichols's work did not cause her symptoms.  The ALJ found Dr. Cebrian's formal causation analysis "persuasive" and credited it over Nichols's own testimony regarding causation. Nichols provided no evidence as to causation beyond her own testimony.

## B.  The Panel's Review

¶ 8    Nichols filed a petition seeking the Panel's review.  In that petition, Nichols argued the Panel should correct or set aside the ALJ's order to the extent it denied Nichols relief because, among other things, certain findings of fact compelled a disposition in her favor.  The Panel disagreed and affirmed the ALJ's order.

## II.    Analysis

## A.    Standard of Review

¶ 9    Under section 8-43-308, C.R.S. 2024, we may not disturb factual findings "supported by substantial evidence" and may only set aside the Panel's decision if (1) the findings of fact are not sufficient to permit appellate review; (2) conflicts in the evidence are not resolved in the record; (3) the factual findings do not support the order; or (4) the award or denial of benefits is not supported by applicable law.

¶ 10    Substantial evidence is "probative, credible, and competent, of a character which would warrant a reasonable belief in the existence of facts supporting a particular finding, without regard to the existence of contradictory testimony or contrary inferences." *Rathburn v. Indus. Comm'n*, 566 P.2d 372, 373 (Colo. App. 1977).

Assessing the weight, credibility, and sufficiency of such evidence is the ALJ's exclusive domain, and findings based on conflicting evidence are conclusive on review. *Delta Drywall v. Indus. Claim Appeals Off.*, 868 P.2d 1155, 1157 (Colo. App. 1993); *Rockwell Int'l v. Turnbull,* 802 P.2d 1182 (Colo. App. 1990).

### B. Proving a Compensable Cumulative Trauma Condition

¶ 11    Nichols bore the burden of proving, by a preponderance of the evidence, that her employment proximately caused her symptoms. *Life Care Ctrs. of Am. v. Indus. Claim Appeals Off.*, 2024 COA 47, ¶ 16; *see* § 8-40-201(14), C.R.S. 2024. The ALJ determines causation "based on the totality of medical and non-medical evidence." Dep't of Lab. & Emp. Rule 17-5(D)(3), 7 Code Colo. Regs. 1101-3:17-5(D)(3).

¶ 12    To guide medical experts' evaluations of the foregoing causation requirement in cases involving cumulative trauma conditions, such as CTS, the Division promulgated guidelines, entitled "Medical Causation Assessment for Cumulative Trauma Conditions" (Causation Assessment Guidelines). *Id.* The Causation Assessment Guidelines identify specific work tasks (Risk Factors), such as typing and mousing, and the threshold amount of exposure

to each task which would render it medically probable that an employee's job caused her cumulative trauma condition. *Id.*

¶ 13 The Causation Assessment Guidelines direct clinicians to determine whether the claimant's job involves Risk Factors "in sufficient degree and duration" to cause a condition or "aggravate" a pre-existing condition. *Id.* Such determination typically involves interviewing the claimant and/or performing a "formal job site evaluation." *Id.*

## C. Application

¶ 14 On appeal, Nichols argues that the Causation Assessment Guidelines expressly allow compensation when a claimant's work "combines with, accelerates, or aggravates a pre-existing symptomatic condition." She then reasons that, because the ALJ found that her work "exacerbated" her pre-existing CTS (as documented in paragraphs 9 and 29 of his factual findings), he necessarily found that Nichols was entitled to compensation. "Having found compensability," Nichols contends, "there would be no reason to assess" medical causation evidence based on the Risk Factors, and thus the ALJ erred in considering Dr. Cebrian's causation opinion predicated on the Risk Factors. The ICAO

6

counters that the ALJ never found compensability and the Panel was simply summarizing Nichols's testimony. We need not resolve this dispute because, even assuming the ALJ made such a finding, the record supports the Panel's determination.

### 1. The Causation Assessment Guidelines

¶ 15 Nichols is correct that the Causation Assessment Guidelines allow compensation where a claimant's work "combines with, accelerates, or aggravates a pre-existing symptomatic condition." Dep't of Lab. & Emp. Rule 17-5(D)(3), 7 Code Colo. Regs. 1101-3:17-5(D)(3). However, the Causation Assessment Guidelines make clear that such a finding must be predicated on a medical causation analysis considering the Risk Factors.

¶ 16 We interpret administrative regulations, like the Causation Assessment Guidelines, de novo, and apply the same rules of construction we would apply in interpreting a statute. *HCA-HealthONE, LLC v. Colo. Dep't of Lab. and Emp.*, 2020 COA 52, ¶ 29. Thus, our primary task is to give effect to the Division's intent. *Id.* We cannot add or subtract words from a regulation, and we must read words and phrases in context. *People v. Howell*, 2024 CO 42, ¶ 8. We give consistent, harmonious, and sensible effect to all the

7

regulation's parts, rendering no words or phrases superfluous. *People v. Tafoya*, 2019 CO 13, ¶ 17.

¶ 17     The introductory paragraph of the regulations describes clinicians' fundamental obligation to determine whether a "work-related exposure or injury" necessitates medical treatment and identifies four scenarios under which the Division covers such treatment, including when a claimant's work "combines with, accelerates, or aggravates a pre-existing symptomatic condition." Dep't of Lab. & Emp. Rule 17-5(D)(3), 7 Code Colo. Regs. 1101-3:17-5(D)(3).  The Causation Assessment Guidelines then expressly set forth "[t]he steps in a medical causation assessment for cumulative trauma conditions[.]"  *Id.*

¶ 18     Reading these provisions together, and noting they all fall within a section labeled "Medical Causation Assessment," makes clear that the scenarios in which treatment is covered are not somehow divorced from the prescribed causation analysis; rather, they are possible conclusions to be derived from such analysis.  *See Allely v. City of Evans*, 124 P.3d 911, 913 (Colo. App. 2005) (in construing a regulation, we may consider headings the promulgating body expressly included).

¶ 19     This point finds further support in the express language of the prescribed steps, including Step 4, which discusses how the Risk Factors apply in the context of evaluating aggravation of a pre-existing condition:

> Complete the required match between the risk factors identified in Section D.3.d Risk Factors Definitions Table and the established diagnosis using the system described in Section D.3.b.  Remember that preexisting conditions may be aggravated by, or contribute to, exposures lower than those listed on the table.  Those preexisting conditions must be determined by the authorized treating physician based on physiologic plausibility.

Dep't of Lab. & Emp. Rule 17-5(D)(3), 7 Code Colo. Regs. 1101-3:17-5(D)(3).  Read harmoniously together so as to give effect to all provisions, the Causation Assessment Guidelines establish that an aggravated pre-existing condition is compensable where a Risk Factors analysis shows that work conditions more likely than not caused the aggravation.

¶ 20     Nichols does not argue that the ALJ's finding that her work exacerbated her symptoms was premised on evidence invoking the Risk Factors.  (Indeed, she argues this finding allowed the ALJ to disregard the Risk Factors entirely.)  As such, and in light of the

foregoing discussion, that finding does not compel a determination of compensability under the Causation Assessment Guidelines.

2.  The ALJ's Finding that Work Exacerbated Nichols's Symptoms

¶ 21  To the extent Nichols argues the ALJ's finding that work exacerbated her symptoms nonetheless undermines the ALJ's denial of her claim, we reject her argument.

¶ 22  We interpret an ALJ's order de novo, applying principles of contract interpretation. *See Blecker v. Kofoed*, 672 P.2d 526, 528 (Colo. 1983) (applying contract interpretation principles to a court order); *Everett v. Dickinson & Co.*, 929 P.2d 10, 13 (Colo. App. 1996) (courts interpret contracts de novo). Thus, in evaluating the intended meaning of a provision in a court order, we construe it in the context of the entire instrument, in accordance with ordinary grammatical conventions, bearing in mind the nature of the subject matter. *Sch. Dist. No. 1 v. Denver Classroom Tchrs. Ass'n*, 2019 CO 5, ¶¶ 12-13; *Chandler-McPhail v. Duffey*, 194 P.3d 434, 441 (Colo. App. 2008). We reconcile any apparently conflicting provisions; only where it is impossible to do so will we find the order ambiguous and determine its meaning as an issue of fact. *Sch.*

*Dist. No. 1*, 2019 CO 5 at ¶ 14; *Ryan v. Fitzpatrick Drilling Co.*, 342 P.2d 1040, 1043 (Colo. 1959).

¶ 23 Here, the subject finding is easily reconciled with the disposition when properly viewed in context and considering that the ALJ's order adjudicated not only Nichols's claim for compensation but also CDPHE's statute of limitations affirmative defense. Nichols bore the burden of proof as to her claim, and CDPHE bore the burden of proof as to its affirmative defense. *See Welsch v. Smith*, 113 P.3d 1284, 1289 (Colo. App. 2005). The ALJ found that neither party met their burden. The finding that Nichols's work "exacerbated [her] symptoms" relates to the ALJ's adjudication of the defense, which turned on whether the two-year filing period began running in 2014 or 2022.

¶ 24 The two-year limitation period begins "when the claimant, as a reasonable [person], should recognize the nature, seriousness[,] and probable compensable character of [the] injury." *Payne*, 426 P.2d at 197; *see* § 8-43-103(2). As the ALJ noted, "[f]or a claimant to appreciate an injury's seriousness and probable compensable nature, the injury must be to some extent disabling." *City of Colo. Springs v. Indus. Claim Appeals Off.*, 89 P.3d 504, 506 (Colo. App.

2004) (internal quotations omitted). In ruling on the statute of limitations issue, the ALJ found that Nichols did not recognize the foregoing until "she suffered a flare-up of symptoms in October 2022" and "was no longer able to alleviate her pain."

¶ 25 The ALJ's findings of fact in paragraphs 9 and 29, where he notes that Nichols's work exacerbated her symptoms, provide factual context and support for this determination. They set forth the chronology of Nichols's experience, as she explained it at the hearing and reported it to clinicians. In fact, paragraph 29 prefaces its reiteration of that chronology by stating CDPHE "has failed to prove it is more probably true than not that [Nichols's] claim is barred by the statute of limitations[.]" According to common writing conventions, all subsequent findings in the paragraph are reasonably construed as intended to support that topic sentence. This includes the finding (mirrored in paragraph 9) that "[t]he combination of increased hours at her computer and changes to workstation ergonomics exacerbated [Nichols's] symptoms" and prompted her to file a claim in 2022.

¶ 26 Paragraph 30 reiterates the point, referencing paragraph 29 and noting: "The preceding chronology reflects that [Nichols] has

experienced upper extremity symptoms sporadically since at least 2014[;] [h]owever, [her] present claim is predicated on a request for compensation from October 24, 2022." The ALJ then finds — based on that timeline, as Nichols related it — that Nichols "did not recognize the nature, seriousness, and probable compensable character of her injury until October 2022[,]" when she could no longer successfully "alleviate" her symptoms.

¶ 27 Both paragraphs 9 and 29 support the ALJ's finding that Nichols reasonably waited until 2022 to file a claim. Neither purports to address medical causation nor references any clinicians' opinions regarding the same. Construing these paragraphs as relating to the ALJ's disposition of the affirmative defense properly reconciles (1) any apparent conflict between the finding that Nichols's increased hours and workstation ergonomics "exacerbated" her symptoms and (2) the ALJ's later determination that, "despite Claimant's testimony," she failed to prove legal causation as to her claim by a preponderance of the evidence.

## III. Disposition

¶ 28 The Panel's order is affirmed.

JUDGE DUNN and JUDGE TOW concur.

13